# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| ERIC K. CONKLIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-155 (RBW)** |
| | ) | |
| U.S. BUREAU OF PRISONS, | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## DEFENDANT'S MOTION TO DISMISS

COMES NOW, the Federal Bureau of Prisons, by its attorney, and moves this Court

pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing the

complaint as the Court lacks subject matter jurisdiction to hear Plaintiff's complaint; Plaintiff's

complaint fails to state a claim on which relief can be granted; and the complaint fails to state a

claim for relief pursuant to the Privacy Act.

Plaintiff should take notice that any factual assertions contained in the accompanying

Declaration and other attachments in support of Defendants' Motion will be accepted by the

Court as true unless Plaintiff submits his own declaration or other documentary evidence

contradicting the assertions in Federal Defendants' attachments.[1/]  See Neal v. Kelly, 963 F.2d

_____

[1/]    Exhibits are attached and relied upon for the limited purpose of allowing the
Court to determine whether it has subject matter jurisdiction over certain claims.  It is well-
established that extraneous evidence may be used to challenge the Court's jurisdiction without
converting the motion into one for summary judgment.  See Land v. Dollar, 330 U.S. 731, 735 n.
4 (1947); Herbert v. National Academy of Sciences, 974 F.2d 192, 197-98 (D.C. Cir. 1992);
Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Bonterra America, Inc. v. Bestmann, 907
F. Supp. 4, 5 n.1 (D.D.C. 1995); Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116,
(continued...)

453 (D.C. Cir. 1992). Furthermore, should this Court treat Defendant's Motion to Dismiss as a motion for summary judgment, Local Rule 7, and Fed. R. Civ. P. 56(e) provide:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). See Fox v. Strickland, 837 F.2d 507 (D.C. Cir. 1988) (*pro se* party may lose if he fails to respond to a dispositive motion); Local Rule 56.1 ("the court may assume facts identified by the moving party in its statement of facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

---

[1]/(...continued)
1120 (D.D.C. 1995); see also 11 Moore's Federal Practice, § 56.30[6] (Matthew Bender 3d ed.).

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

3

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

_____
                                        )
ERIC K. CONKLIN,                        )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil Action No. 07-155 (RBW)
                                        )
U.S. BUREAU OF PRISONS,                 )
                                        )
                Defendant.              )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THE DEFENDANT'S MOTION TO DISMISS

Plaintiff Eric Conklin filed this action claiming that the Bureau of Prisons ("BOP") failed to maintain an accurate system of records under the Privacy Act, 5 U.S.C.§ 552a(e)(5).  Plaintiff, however, failed to timely file this action, and the matter should be dismissed for lack of subject matter jurisdiction.  In addition, Plaintiff's complaint fails to state a claim upon which the Court may grant relief, and further fails to demonstrate that he is entitled to civil remedies under the Privacy Act, 5 U.S.C. § 552a(g).  Thus, dismissal is appropriate.

I.      **STATEMENT OF THE CASE**

Plaintiff Eric Conklin, Federal Register Number 19393-058, is currently confined at the Federal Correctional Institution, in Beckley, West Virginia ("FCI Beckley").  He was sentenced to a 60 month term of imprisonment by the United States District Court for the Western District of Virginia on May 13, 2004, for violation of 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  See Defendant's Exhibit 1, Declaration of Darrell Lennon.  Plaintiff's current projected release date, the date on which he will complete serving his sentence with consideration for good conduct time, is November 27, 2008.  See id.

Plaintiff filed this action alleging the Bureau of Prisons relied upon inaccurate information contained in his Pre-Sentence Investigation Report ("PSI") to his detriment. Plaintiff asserts the alleged inaccurate information adversely affected his custody classification score, precluding his transfer to a lower security institution. See Complaint at 5. The information Plaintiff specifically complains of are statements in his PSI that he threatened individuals with weapons. Plaintiff asserts the allegations of threats were made by co-defendants and/or witnesses and not by law enforcement officials, and thus should not have been relied upon by the BOP in making its custody classification determination. See Complaint at 5-6. Plaintiff requests unspecified monetary damages and asks this Court to direct the BOP to correct the alleged inaccurate records. See Complaint at 13.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.

Fed. R. Civ. P. 12(b). The standard to be applied in deciding a motion to dismiss is well-established. For purposes of deciding whether a plaintiff has failed to state a cause of action, the factual allegations of the complaint must be taken as true, and all ambiguities or doubts in the factual allegations must be resolved in favor of the pleader. Caudle v. Thomason, 942 F. Supp. 635, 638 (D. D.C. 1996). Despite this generous standard, the complaint still must set forth

sufficient factual information to suggest that there exists some recognized legal theory upon

which relief can be granted.  Id.  A court must dismiss a complaint where, even assuming all the

factual allegations are true, the plaintiff has failed to establish a right to relief based upon those

facts.  Id.

      The plaintiff bears the burden of establishing the court's subject matter jurisdiction.  See

Miller v. United States, 710 F.2d 656, 662 (10th Cir.), cert. denied, 464 U.S. 939 (1983); Baird v.

United States, 653 F.2d 437, 440 (10th Cir. 1981), cert. denied, 454 U.S. 1144 (1982).  In

deciding a motion under Rule 12(b)(1), the Court may go beyond the allegations of the

Complaint.  See Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947); Herbert v. National Academy of

Sciences, 974 F.2d 192, 197-98 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C.

Cir. 1987); Bonterra America, Inc. v. Bestmann, 907 F. Supp. 4, 5 n.1 (D.D.C. 1995); Kuffel v.

United States Bureau of Prisons, 882 F. Supp. 1116, 1120 (D.D.C. 1995).  Additionally, a court

may properly take judicial notice of court records without converting a motion to dismiss into a

motion for summary judgment.  E.g., Baker v. Henderson, 150 F.Supp.2d 17, 19 n. 1 (D.D.C.

2001) ("in determining whether a complaint fails to state a claim, the court may take judicial

notice of matters of a general public nature, such as court records, without converting the motion

to dismiss into one for summary judgment");  Himmelman v. MCI Communications, 104 F.

Supp. 2d 1, 3 (D.D.C. 2000) ("[t]he court may consider [on a motion to dismiss] the allegations

of the complaint, documents attached to or specifically referred to in the complaint, and matters

of public record").  This is so because a motion under Rule 12(b)(1) "calls into question the

court's power to hear the plaintiff's claim . . . and therefore imposes upon courts an affirmative

obligation to ensure that they are acting within the scope of their jurisdictional power."  5A

Wright & Miller, *Federal Practice & Procedure* 2d § 1350; see also District of Columbia Retirement Bd. v. United States, 657 F. Supp. 428, 431 (D.D.C.1987). Accordingly, the Court need not limit itself to the allegations of the Complaint in deciding a 12(b)(1) motion. Instead, "the Court may consider the complaint supplemented by undisputed facts evidenced in the record . . . plus the court's resolution of disputed facts." Herbert v. National Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir.1992).

A motion to dismiss under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). In making determinations on a motion to dismiss under Rule 12(b)(6), a court must view facts alleged in the complaint in the light most favorable to the plaintiff. Conley, 355 U.S. at 45; see also Nix v. Hoke, 139 F. Supp. 2d 125, 131 (D.D.C. April 2001) (*citing*, Weyrich v. The New Republic, Inc., 235 F.3d 617, 623 (D.C. Cir. 2001)), and Slaby v. Fairbridge, 3 F. Supp. 2d 22, 27 (D.D.C. 1998). In this case, Plaintiff fails to establish a right to relief on the claims asserted, even when accepting the facts he alleges as true.

## III.    THE COURT LACKS JURISDICTION OVER PLAINTIFF'S COMPLAINT.

### A.    Plaintiff Failed to File Within the Privacy Act's Two Year Statute of Limitations.

The basis of Plaintiff's complaint is that the BOP relied upon inaccurate information in his PSI to determine his custody classification score. In essence, Plaintiff is alleging a violation of the Privacy Act, which requires agencies to keep accurate records to assure fairness to

4

individuals.  See Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992).

The relevant provisions of the Privacy Act are contained in 5 U.S.C. § 552a(g)(1), *Civil Remedies*, which provides the following:

> Whenever any agency (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency....

5 U.S.C. § 522a(g)(1)(C).  While the Privacy Act establishes a cause of action, it also provides limitations on the time limit an individual has to bring an action.  Specifically, the Privacy Act provides that "[a]n action to enforce any liability created under this section may be brought . . . within **two years** from the date on which the cause of action arises . . . ."  5 U.S.C. § 522(a)(g)(5) (emphasis added).  The statute of limitations under the Privacy Act is jurisdictional in nature and must be strictly construed because it is an "'integral condition of the sovereign's consent to be sued under the Privacy Act.'"  Bowyer v. United States Dep't of the Air Force, 875 F.2d 632, 635 (7th Cir. 1989) (*quoting* Diliberti v. United States, 817 F.2d 1259, 1262 (7th Cir. 1987)); see also Harrell v. Fleming, 285 F.3d 1292, 1293 (10th Cir. 2002) (holding that failure to file within Privacy Act statute of limitations is jurisdictional).  Thus, when a plaintiff fails to file within the two year statute of limitations, the court lacks subject matter jurisdiction and the matter should be dismissed.  See Harrell, 285 F.3d at 1293 ("the statue of limitation qualifies the waiver of sovereign immunity and 'constitutes a limitation on subject matter jurisdiction.'") (*quoting* Dahn v. United States, 127 F.3d 1249, 1252 (10th Cir. 1997)).

For purposes of the Privacy Act, "a cause of action commences when the person knows or

has reason to know of the alleged violation." Wills v. Office of Personnel Management, 16 F.3d 414 (Table), 1994 WL 22349 *1 (4th Cir. 1994) (per curiam) (*quoting* Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990)). Moreover, a new cause of action does not arise "'upon each and every subsequent adverse determination based on erroneous records,' otherwise, 'the two-year statute would never run." Harrell, 285 F.3d at 1293 (*quoting* Gowan v. United States Dep't of the Air Force, 148 F.3d 1182, 1187 (10th Cir. 1998)).

In this case, the alleged inaccurate information is in Plaintiff's PSI, which was provided to Plaintiff prior to the time of his sentencing. Neither Plaintiff nor his attorney objected to the alleged inaccurate information in the PSI during the sentencing phase of his criminal case. See Defendant's Exhibit 1, Attachment 1, USPO Correspondence dated February 27, 2006. In May 2004, Plaintiff's PSI was adopted as factual by the court. See Defendant's Exhibit 1, Attachment 2, Judgment and Commitment Order. In June 2004, the information in Plaintiff's PSI was used to determine his custody classification score at USP Leavenworth. See Defendant's Exhibit 1. Clearly, Plaintiff knew or had reason to know of the inaccurate information in May 2004 during the sentencing phase of his criminal trial, and Plaintiff knew or had reason to know the inaccurate information was used in determining his custody classification score in June 2004.

Plaintiff, however, did not file the instant action until January 22, 2007, which is over two years after Plaintiff knew or had reason to know of a possible Privacy Act violation. Because Plaintiff did not file his complaint within two years from the time his cause of action arose, he is outside the statute of limitations. Inasmuch as the Plaintiff failed to file his complaint within the two year statute of limitations, there is a lack of jurisdiction over this action and the complaint should be dismissed with prejudice.

**B.      Plaintiff's Request for Amendment of the Record is Moot.**

In any event, Plaintiff's claim against the BOP is moot.  It is well-settled that federal

courts lack jurisdiction to "give opinions upon moot questions or abstract propositions."

Calderon v. Moore, 518 U.S. 149, 150 (1996) (*quoting* Mills v. Green, 159 U.S. 651, 653 (1895).

See also Qassim v. Bush, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (action by government

"eradicated effects of alleged violation" and rendered matter moot).

Here, Plaintiff's custody classification score was changed in June 2006, due to the fact

that the information in the PSI was based on statements of co-defendants and witnesses and not

law enforcement officials.  See Defendant's Exhibit 1.  Accordingly, whether the information in

Plaintiff's PSI is accurate or inaccurate does not affect Plaintiff's custody classification, as the

information Plaintiff alleges is inaccurate is no longer taken into consideration in determining his

custody classification score.  Moreover, when a custody classification score changes, the new

custody classification records are placed in the Inmate Central File and the old custody

classification records are destroyed.  See Defendant's Exhibit 1.  As there is no longer a case or

controversy, the amendment portion of the complaint is moot.  See Powell v. McCormack, 395

U.S. 486, 496 (1969) (a case becomes moot when the issues are no longer live or the parties lack

a cognizable interest in the outcome).


**IV.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
RELIEF MAY BE GRANTED.**

**A.      Amendment of the Records is not an Available Remedy.**

The Privacy Act allows an agency's Director to promulgate regulations that exempt any

system of records within the agency from any part of the Privacy Act, with the exception of

subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and ( i), if the

system of records is:

> maintained by an agency or component thereof which performs as its principal
> function any activity pertaining to the enforcement of criminal laws, including . . .
> correctional, probation, pardon, or parole authorities, and which consists of . . .
> reports identifiable to an individual compiled at any stage of the process of
> enforcement of the criminal laws from arrest or indictment through release from
> supervision.

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, the Bureau of Prisons has established

regulations that exempt the Bureau of Prisons' Inmate Central Record System (JUSTICE/BOP-

005) from subsections (c)(3) and (4), (d), (e)(2) and (3), (e)(4)(H), (e)(8), (f) and (g).  See 28

C.F.R. § 16.97(a)(4).

     In this action, Plaintiff challenges information in his PSI and his custody classification

records.  Copies of an inmate's PSI and custody classification records are maintained in the

Inmate Central File.  See Defendant's Exhibit 1.  Records in the Inmate Central File are exempt

from subsections (c)(3) and (4), (d), (e)(2) and (3), (e)(4)(H), (e)(8), (f) and (g).  See 28 C.F.R. §

16.97(a)(4), exempting Inmate Central Record System (JUSTICE/BOP-005).

     Insofar as Plaintiff seeks under 5 U.S.C. § 552(d) the amendment or expungement of his

PSI or custody classification records maintained in his Central File, such relief is unavailable

under 5 U.S.C. § 552a(g).  See Risley v. Hawk, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per

curiam) (regulations exempt Bureau of Prisons records from amendment provision of Privacy

Act); Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992)(upholding district court's

dismissal of claim under section 552(d)).

**B.     The Bureau of Prisons Took Appropriate Action When Informed of the Alleged Inaccurate Information.**

BOP Program Statement ("P.S.") 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, provides guidance for BOP staff when the accuracy of information in an inmate's Central File is challenged.  PS. 5800.11 specifically provides:

> c.  Inmate Challenge to Information.  An inmate may challenge the accuracy of the information in his or her Inmate Central File.  Unit team staff shall take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified.  The inmate is required to provide staff with sufficient information in support of a challenge (names of persons to contact, government agency, etc . . . ).

> When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct.

> For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided.  **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**

> If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the challenged document.  Staff shall file this information in the applicable section of the Inmate Central file, and also make notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

> When the USPO verifies that the information in the PSI is indeed inaccurate, as claimed by the inmate, staff should subsequently review, and where indicated, correct Bureau generated reports or data such as the Inmate Load and Security Designation form (BP-337), the Custody Classification form (BP-388), Progress Report, and any other reports that may have been based on the PSI.  Bureau reports, data, or SENTRY transactions should be corrected within a reasonable period of time after identification as being inaccurate.

P.S. 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-File, pp. 19-20 (emphasis in

original) (attached as Defendant's Exhibit 2).

The BOP's response to Plaintiff's challenge to the information contained in his PSI was consistent with established policy. Ordinarily, upon receiving an inmate's complaint of inaccurate information in a PSI, the Case Manager contacts the USPO about the complaint. See id. In the case at hand, Plaintiff had already contacted the USPO. See Defendant's Exhibit 1, Attachment 1. The USPO had provided Plaintiff a written response indicating no change would be made to his PSI. See Defendant's Exhibit 1, Attachment 1. The Case Manager placed a copy of the written response from the USPO in Plaintiff's Inmate Central File. See Defendant's Exhibit 1.

It would have been appropriate, based on the USPO response, for BOP staff to continue to rely on the information in the PSI in determining Plaintiff's custody classification score. However, based on Plaintiff's complaint about the information in his PSI, Plaintiff's Case Manager re-scored Plaintiff's custody classification in June 2006, without taking into account the alleged inaccurate information. See Defendant's Exhibit 1. The Case Manager's actions resulted in a decrease in Plaintiff's custody classification score, and Plaintiff's security level dropped from Medium to Low. See id. Although Plaintiff's security level dropped to Low, due to population overcrowding at Low security facilities, a Management Variable for Population Management[1] was applied and Plaintiff continues to be housed at FCI Beckley.[2] See id.

---

[1]    Management Variables are defined in Program Statement 5100.06, Security Designation and Custody Classification Manual, as variables that provide reasonable justification for housing an inmate in an institution which is not consistent with the security level assigned on the Security Designation Data form. P.S. 5100.08, Cpt. 2, p. 3. One such Management Variable is the 'Population' Management Variable. This variable is applied for such purposes as facility activation, population pressures affecting available appropriate-level bed space, and

(continued...)

10

### D.    Plaintiff is not Entitled to Monetary Damages.

The Privacy Act provides in pertinent part:

Each agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

5 U.S.C. § 552a(e)(5). Subsection (g) of the Privacy Act allows an individual to file a civil action against an agency when an agency refuses to amend its records upon request or fails to maintain its records with the requisite level of accuracy and completeness required.  5 U.S.C. § 552a(g)(1)(A) and (C).   Thus, when an agency's violation of (e)(5) results in a determination that is adverse to an individual, the Privacy Act permits a suit for damages pursuant to 5 U.S.C. 552a(g)(1)(C).  See Perez v. Bureau of Prisons, No. Civ.A.- 97-0380 RMU, 1998 WL 1749285 at *4 (D.D.C. January 30, 1998).

To state a claim for money damages under the Privacy Act, a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and consequently, that an "adverse determination [wa]s made" respecting the plaintiff. Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 582 (D.C. Cir. 2002); 5 U.S.C. § 552a(g)(1)(c).  Thus, a plaintiff must allege: inaccurate records, agency intent, proximate

---

[1]/(...continued)
gang/security concerns.  See P.S. 5100.08, Cpt. 5, p. 3 (attached as Defendant's Exhibit 3).

[2]/    Plaintiff cannot challenge the fact that a Management Variable was applied, as the drop in his custody classification score did not entitle Plaintiff to a transfer to a less secure facility. It is clearly established that an inmate has no constitutional right to a particular custody classification.  Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976).  Furthermore, a prisoner has no constitutional right to be held at a particular correctional facility or to be transferred to another facility.  Meachum v. Fano, 427 U.S. 215, 225 (1976).

causation, and an adverse determination.  Toolasprashad, 286 F.3d at 582.

In Deters v. United States Parole Commission, 85 F.3d 655, 658 (D.C. Cir. 1996), the Circuit Court explained that analysis of the inaccurate records element of a Privacy Act claim depends on whether the truth underlying the challenged statements is clearly provable or relatively easily ascertainable.  In "typical" cases, where truth can readily be ascertained, it is "feasible, necessary, and proper, for the agency and, in turn, the district court to determine whether each filed item of information is accurate."  Deters, 85 F.3d at 658 (quoting Doe v. United States, 821 F.2d 694, 699 (D.C.Cir.1987) (en banc)).

This is a typical case where the truth can readily be ascertained.  The BOP utilized Plaintiff's PSI to determine his custody classification score.  The information in the PSI was deemed factual by the sentencing judge when he adopted the PSI at sentencing.  See Defendant's Exhibit 1, Attachments 1 & 2.  While Plaintiff now challenges the accuracy of the information in the PSI, he did not do so at the appropriate stage in his criminal case.[3/]  See Defendant's Exhibit 1.  As Plaintiff cannot show the agency failed to maintain an accurate record, Plaintiff cannot prove the first element in establishing a damages claim.

As to the second element, the Circuit Court defined a willful or intentional Privacy Act violation as a violation "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful."  Deters, 85 F.3d at 660.  In the Privacy Act context the courts have defined the "willful and intentional" standard as "somewhat greater than gross negligence."

---

[3/]        In any event, Plaintiff has been given the benefit of the doubt in that the information adopted as factual by the sentencing court is no longer being relied upon by the BOP in determining his custody classification score.  See Defendant's Exhibit 1.

<u>Tijernia v. Walters, et al.</u>, 821 F. 2d 789, 799 (D.C. Cir. 1987).  "Willful and intentional" has

also been described as "either by committing the act without grounds for believing it to be

lawful, or by flagrantly disregarding others' rights under the Act."  <u>Albright v. United States of

America</u>, 732 F. 2d 181, 188 (D.C. Cir. 1984).

      Plaintiff's complaint fails in this respect.  The BOP made a proper determination, within

its discretion, in scoring Plaintiff's custody classification.  This conduct was neither egregious

nor unlawful, but was a proper exercise of agency authority, given the fact that there was no

evidence that the information in the PSI is inaccurate.  Moreover, Plaintiff brought the alleged

inaccurate information to BOP staff's attention sometime around March or April 2006.  <u>See</u>

Complaint.  By June 2006, Plaintiff's custody classification was re-scored without reference to

the alleged inaccurate information, despite the lack of evidence to substantiate Plaintiff's claim

that the information was in fact inaccurate.  Clearly, the BOP's conduct was neither egregious

nor unlawful.

      As to the third element, proximate cause, while the use of the information in Plaintiff's

PSI may have precluded Plaintiff's transfer to a less secure facility, the denial of the transfer was

not proximately caused by inaccurate information.  Even when Plaintiff's custody classification

score was recalculated without reliance on the alleged inaccurate information, Plaintiff's

classification score changed but his place of incarceration did not, based on the application of a

Management Variable.  <u>See</u> Defendant's Exhibit 1.  As Plaintiff cannot show the alleged

inaccurate information proximately caused the denial of any transfer, he has failed to state a

claim for damages.

      As for the final element, adverse determination, the D.C. Circuit in <u>Toolasprashad v.</u>

13

Bureau of Prisons, 286 F.3d 576, 584 (D.C. Cir. 2002), indicated the Privacy Act provides little guidance as to the intended breadth of the phrase "determination . . . adverse to the individual." In Deters v. United States Parole Commission, 85 F.3d 655, 659 (D.C.Cir. 1996), the D.C. Circuit recognized that in the prison context, "adverse determination" denotes, at least, a decision that negatively "affects [an] inmate's rights...."

Congress vested the Attorney General and the Federal Bureau of Prisons with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoners. See 18 U.S.C. § 3621. In a decision to place an inmate in a halfway house, a transfer recommendation or prisoner classification, courts have consistently held such matters are governed by the discretion of prison officials and there can be no expectation of a liberty interest sufficient to trigger due process protections. See Meachum v. Fano, 427 U.S. 215, 224 (1976); Montanye v. Haymes, 427 U.S. 236 (1976); Murray-Bey v. Thornburgh, No. 90-1830, 1991 WL 222414 (D.D.C. Oct. 15, 1991)("A prisoner has no constitutional right to be housed at a particular institution.") (citing Meachum v. Fano, 427 U.S. 215 (1976)); Ali v. United States, 743 F. Supp. 50, 52 (D.D.C. 1990) ("the Attorney General has unfettered discretion to determine where D.C. Code offenders serve their prison sentences and to decide where to transfer them"). As Plaintiff does not have a right to a particular custody classification or to a transfer, he simply cannot establish his rights were negatively impacted. Accordingly, Plaintiff failed to state a claim for damages under the Privacy Act.

## V.    <u>CONCLUSION</u>

      For the foregoing reasons, this Privacy Act suit should be dismissed.

                Respectfully submitted,


            /s/ Jeffrey A. Taylor
           JEFFREY A. TAYLOR, D.C. BAR # 498610
           United States Attorney


            /s/ Rudolph Contreras
           RUDOLPH  CONTRERAS, D.C. BAR # 434122
           Assistant United States Attorney


            /s/ Darrell C. Valdez
           DARRELL C. VALDEZ, D.C. BAR # 420232
           Assistant United States Attorney
           Judiciary Center Building
           555 4th St., N.W., Civil Division
           Washington, D.C.  20530
           (202) 307-2843

### CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendant's Motion to Dismiss to be served by

first class mail upon *pro se* plaintiff at:

Eric K. Conklin
No. 19393-058
FCI - Beckley
P.O. Box 350
Beaver, WV 25813

on this 2nd day of April, 2007.


   /s/ Darrell C. Valdez
DARRELL C. VALDEZ
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN,
          Plaintiff,

v.                                    Civil Action No. 1:07-cv-00155-RBW

UNITED STATES BUREAU OF
PRISONS,
          Defendant.

## DECLARATION OF DARRELL LENNON

      In accordance with the provisions of Section 1746 of Title 28, United States Code, I, the undersigned, do hereby make the following declaration:

1.     I am a Case Manager at the Federal Correctional Institution (FCI) Beckley, West Virginia.

2.     As a Case Manager I am familiar with Eric Conklin, Federal Register Number 19393-058.

3.     Inmate Conklin is currently confined at FCI Beckley and is on my caseload.

4.     As Eric Conklin's Case Manager, I am familiar with his custody classification records and have access to inmate Conklin's Inmate Central File, as well as access to SENTRY, the Bureau of Prisons online inmate information system.

5.     A review of SENTRY indicates inmate Conklin was sentenced to a 60 month term of imprisonment by the United States District Court for the Western District of Virginia on May 13, 2004, for violation of 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

6.     Inmate Conklin's current projected release date, the date on which he will complete serving his sentence with consideration for good conduct time, is November 27, 2008.

7.     Inmate Conklin has alleged that information in his Presentence Investigation Report (PSI) is inaccurate and was inappropriately used to calculate his custody classification score.



8.  In June 2004, the information inmate Conklin alleges is inaccurate in his PSI was used to determine his custody classification score at USP Leavenworth.

9.  In accordance with Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-File, ordinarily, upon receiving an inmate's complaint of inaccurate information in a PSI, I would contact the USPO about the inmate's complaint.

10. When inmate Conklin notified me of the alleged inaccurate information in his PSI, inmate Conklin had already contacted the USPO and the USPO had already provided inmate Conklin a written response indicating no change would be made to his PSI.

11. As inmate Conklin's Case Manager, I had a copy of the written response from the USPO placed in inmate Conklin's Inmate Central File.

12. Although it would have been appropriate, based on the USPO response, for me to continue to rely on the information in the PSI in determining inmate Conklin's custody classification score, based on his complaint about the information in his PSI, I re-scored his custody classification in June 2006, without taking into account the alleged inaccurate information.

13. My actions resulted in a decrease in inmate Conklin's custody classification score, and his security level dropped from Medium to Low.

14. Although inmate Conklin's security level dropped to Low, due to population overcrowding at Low security facilities, a Management Variable for Population Management was applied and he continued to be housed at FCI Beckley.

15. Inmate Conklin brought the alleged inaccurate information to my attention sometime around March or April 2006. By June 2006, I had re-scored inmate Conklin's custody classification without reference to the alleged inaccurate information, despite the lack of evidence to substantiate his claim that the information was in fact inaccurate.

16. Inmate Conklin has been given the benefit of the doubt in that the information adopted as factual by the sentencing court is no longer being relied upon by the BOP in determining his custody classification score.

17. When a custody classification score changes, the new custody classification records are placed in the Inmate Central File and the old custody classification records are destroyed.

18. An inmate's PSI and custody classification records are maintained in the Inmate Central File.

19. Attached are true and accurate copies of the following documents:

Attachment 1: USPO Correspondence dated February 27, 2006
Attachment 2: Judgment and Commitment Order dated May 14, 2004
Attachment 3: Custody Classification Form dated June 8, 2006

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 2‌ day of March 2007.

Darrell Lennon
Case Manager
FCI Beckley
Federal Bureau of Prisons

# UNITED STATES DISTRICT COURT
## OFFICE OF THE PROBATION OFFICER
### WESTERN DISTRICT OF VIRGINIA

WILLIAM P. ROSS III
CHIEF PROBATION OFFICER

RICHARD H. POFF FEDERAL BUILDING
P. O. BOX 1563
ROANOKE, VA 24007



REPLY TO DIVISION OFFICE:

P.O. Box 621
Abingdon, VA 24212-0621
PHONE:      (276) 628-3183
FAX:        (276) 628-1354

February 27, 2006

Eric K. Conklin
Reg. # 19393-058
FCI - Beckley
P. O. Box 350
Beaver, West Virginia 25813

Dear Mr. Conklin:

In reference to your letter dated January 16, 2006, I have reviewed your presentence report, as well as the case agent's notes for which the offense conduct was taken from. The information in paragraphs 8 and 9, for which you referenced, was taken from the case agent's reports. During the objection stage of the presentence report, neither you nor your attorney objected to that information at that time and, on the date of your sentencing, the Honorable James P. Jones, Chief United States District Judge, found the information in the presentence report as fact. Therefore, no changes will be made.

If you have further questions, please feel free to contact me.

Sincerely,

Thomas V. H. O'Neill
United States Probation Officer

TVO/jgc



GOVERNMENT EXHIBIT 1 - Attachment 1

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

MAY 14 2004

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

AO 245B    (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Western District of Virginia

UNITED STATES OF AMERICA
### V.
ERIC KAVE CONKLIN

### JUDGMENT IN A CRIMINAL CASE

Case Number:   1:03-CR-00096-001

USM Number:   19393-058

Michael Allen Bragg, Esquire
_Defendant's Attorney_

## THE DEFENDANT:

[X] pleaded guilty to count(s)    One and Two

[ ] pleaded nolo contendere to count(s)
which was accepted by the court.

[ ] was found guilty on count(s)
after a plea of not guilty,

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime | 12/17/02 | One |
| 18 USC §922(g)(1) | Possession of a Firearm by a Convicted Felon | 12/17/02 | Two |

The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on count(s)

[X] Count(s)    Three    [X] is [ ] are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 13, 2004
_Date of Imposition of Judgment_

_Signature of Judge_

James P. Jones, Chief United States District Judge
_Name and Title of Judge_

**5/14/04**
_Date_

A TRUE COPY, TESTE:
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

GOVERNMENT
EXHIBIT
1-Attachment 2

AO 245B    (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
           Sheet 2 - Imprisonment

|  |  |
|---|---|
| DEFENDANT: ERIC KAVE CONKLIN  19393-058 | Judgment - Page __2__ of __6__ |
| CASE NUMBER: 1:03-CR-00096-001 |  |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Seventy-two (72) months. This sentence consists of a term of sixty (60) months as to Count One and a term of twelve (12) months as to Count Two, to run consecutively to the sentence imposed as to Count One.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before _____ on _____

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
          Sheet 3 - Supervised Release

_____

DEFENDANT:   ERIC KAVE CONKLIN                          Judgment-Page __3__ of __6__
CASE NUMBER: 1:03-CR-00096-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Five (5) years as to each count, to run concurrently.

## MANDATORY CONDITIONS OF SUPERVISION

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
    future substance abuse. (Check, if applicable.)

☒  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐  The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a
    student, as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet on this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of
    each month;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other
    acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any
    controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of
    a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any
    contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the
    permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's
    criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm
    the defendant's compliance with such notification requirement.

AO 245B   (Rev. 12/03 – VAW Additions 3/04) Judgment in a Criminal Case
          Sheet 3C - Supervised Release

DEFENDANT:     ERIC KAVE CONKLIN                              Judgment-Page   4   of   6
CASE NUMBER: 1:03-CR-00096-001

# SPECIAL CONDITIONS OF SUPERVISION

While on supervised release, the defendant:

(1) Must pay any monetary penalty that is imposed by this judgment in the manner directed by the court.

(2) Must not possess a firearm as defined in 18 U.S.C. § 921, including a destructive device, and must reside in a residence free of the same.

(3) Must submit to warrantless search and seizure of person and property by the probation officer or other law enforcement officer, whenever such officer has reasonable suspicion that the defendant is engaged in criminal activity.

(4) Must participate in a program of testing and treatment for substance abuse as directed by the probation officer, until such time as the defendant is released from the program by the officer.

AO 245B    (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
           Sheet 5 - Criminal Monetary Penalties

DEFENDANT:    ERIC KAVE CONKLIN                          Judgment - Page    5    of    6
CASE NUMBER: 1:03-CR-00096-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|           | **Assessment** | **Fine** | **Restitution** |
|-----------|----------------|----------|-----------------|
| TOTALS    | $ 200.00       | $ 1,000.00 | $             |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|-----------------|-------------------------|----------------------------|
|                   |                 |                         |                            |
| TOTALS            | $0.00           | $0.00                   |                            |

☐  Restitution amount ordered pursuant to plea agreement $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the    ☐  fine    ☐  restitution.

☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 13, 1996.

AO 245B    (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
           Sheet 6 - Schedule of Payments

Judgment - Page ___6___ of ___6___

DEFENDANT:    ERIC KAVE CONKLIN
CASE NUMBER:  1:03-CR-00096-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☒  Lump sum payment of $ 200.00 _____ due immediately, balance due

        ☐  not later than _____ , or
        ☒  in accordance    ☒ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or   ☐ F below); or

C  ☐  Payment in equal ___monthly___ (e.g., weekly, monthly, quarterly) installments of $ ___25.00___ over a period of
        _____ (e.g., months or years), to commence ___90___ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
        term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Any installment schedule is subject to adjustment by the court at any time during the period of imprisonment or supervision, and the defendant shall notify the probation officer and the U.S. Attorney of any change in the defendant's economic circumstances that my affect the defendant's ability to pay.

All criminal monetary penalties shall be made payable to the Clerk, U.S. District Court, P.O. Box 1234, Roanoke, Virginia 24906, for disbursement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
Attachment (Page 1) - Statement of Reasons

DEFENDANT: ERIC KAVE CONKLIN
CASE NUMBER: 1:03-CR-00096-001
DISTRICT:

# STATEMENT OF REASONS
## (Not for Public Disclosure)

☐ **THE COURT ADOPTS THE PRESENTENCE REPORT AND GUIDELINE APPLICATIONS WITHOUT CHANGE.**

### OR

☒ **THE COURT ADOPTS THE PRESENTENCE REPORT AND GUIDELINE APPLICATIONS BUT WITH THESE CHANGES:** (Use Page 3, if necessary.)

The court finds that the defendant is not an armed career criminal.

☐ **Chapter Two** of the U.S.S.G. Manual determinations by court (including changes to base offense level or specific offense characteristics):

☐ **Chapter Three** of the U.S.S.G. Manual adjustment determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

☐ **Chapter Four** of the U.S.S.G. Manual determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

☐ **THE COURT ADOPTS THE PRESENTENCE REPORT WITH THESE COMMENTS OR FINDINGS** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions. Specify court comments or findings, including paragraphs in the presentence report.) (Use Page 3, if necessary.)

**GUIDELINE RANGE DETERMINED BY THE COURT (BEFORE DEPARTURES):**

Total Offense Level: 11
Criminal History Category: III
Imprisonment Range: Ct. 1 - 5 yrs. ; Ct. 2 - 12 to 18 months
Supervised Release Range: 3 to 5 years
Fine Range: $ 2,000.00 to $ 20,000.00

☒ Fine waived or below the guideline range because of inability to pay.

☒ **THE SENTENCE IS WITHIN THE GUIDELINE RANGE, THAT RANGE DOES NOT EXCEED 24 MONTHS, AND THE COURT FINDS NO REASON TO DEPART.**

### OR

☐ **THE SENTENCE IS WITHIN A GUIDELINE RANGE, THAT RANGE EXCEEDS 24 MONTHS, AND THE SPECIFIC SENTENCE IS IMPOSED FOR THESE REASONS:** (Use Page 3, if necessary.)

AO 245B    (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case·
Attachment (Page 2) - Statement of Reasons

DEFENDANT:    ERIC KAVE CONKLIN
CASE NUMBER: 1:03-CR-00096-001
DISTRICT:

# STATEMENT OF REASONS
## (Not for Public Disclosure)

## RESTITUTION DETERMINATIONS

Total Amount of Restitution:    $ _____

- [ ] For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

- [ ] For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

- [ ] For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

- [ ] Restitution is not ordered for other reasons:

- [ ] Partial restitution is ordered under 18 U.S.C. § 3663(c) for these reasons:

## DEPARTURE (Check all that apply)

- [ ] The sentence departs <u>below the guideline range</u> for the following reasons; or
- [ ] The sentence departs <u>above the guideline range</u> for the following reasons:

### Pursuant to a Plea Agreement
- [ ] based on 5K1.1 motion of the government based on the defendant's substantial assistance;
- [ ] based on a government motion pursuant to an early disposition program;
- [ ] based on a binding plea agreement for departure which the court has accepted (cite below reason, if applicable);
- [ ] based on a plea agreement which <u>cites the below reason</u> for departure, which the court finds to be justified; or
- [ ] based on a plea agreement that states that the government will not oppose a defense departure motion and cites the <u>below reason.</u>

### Pursuant to a Motion Not Addressed in a Plea Agreement
- [ ] pursuant to a 5K1.1 motion of the government based on the defendant's substantial assistance;
- [ ] pursuant to a government <u>motion based on the below reason for</u> departure; or
- [ ] pursuant to a defense motion <u>based on the below reason</u> for departure to which the government has not objected; or
- [ ] pursuant to a defense motion <u>based on the below</u> reason for departure to which the government has objected.

- [ ] Other than plea agreement or motion by the parties based on <u>the below reason</u> for departure.

## Reason(s) for Departure

- [ ] 4A1.3 Criminal History Adequacy (explain)
- [ ] 5K2.0 Aggravating or Mitigating Circumstances (explain):
- [ ] 5K2.1 Death
- [ ] 5K2.2 Physical Injury
- [ ] 5K2.3 Extreme Psychological Injury
- [ ] 5K2.4 Abduction or Unlawful Restraint
- [ ] 5K2.5 Property Damage or Loss
- [ ] 5K2.6 Weapons and Dangerous Instruments
- [ ] 5K2.7 Disruption of Government Function

- [ ] 5K2.8 Extreme Conduct
- [ ] 5K2.9 Criminal Purpose
- [ ] 5K2.10 Victim's Conduct
- [ ] 5K2.11 Lesser Harm
- [ ] 5K2.12 Coercion and Duress
- [ ] 5K2.13 Diminished Capacity
- [ ] 5K2.14 Public Welfare

- [ ] 5K2.16 Voluntary Disclosure of Offense
- [ ] 5K2.17 High-Capacity Semiautomatic Firearm
- [ ] 5K2.18 Violent Street Gang
- [ ] 5K2.20 Aberrant Behavior
- [ ] 5K2.21 Dismissed and Uncharged Conduct
- [ ] 5K2.22 Age or Health of Sex Offenders
- [ ] 5K2.23 Discharged Terms of Imprisonment
- [ ] 5K3.1 Early Disposition, "fast-track" Program

- [ ] Other (e.g., 2B1.1 commentary, 5H1.1-5H1.6 or 5H1.11) (explain and state guideline and/or statutory basis). (Use Page 3, if necessary.)

AO 245B  (Rev. 12/03 - VAW Additions 3/04) Judgment in a Criminal Case
Attachment (Page 3) - Statement of Reasons

DEFENDANT:  ERIC KAVE CONKLIN
CASE NUMBER: 1:03-CR-00096-001
DISTRICT:

# STATEMENT OF REASONS
### (Not for Public Disclosure)

## ADDITIONAL PRESENTENCE REPORT AND GUIDELINE APPLICATION CHANGES
(If necessary.)

## SPECIFIC SENTENCE IS IMPOSED FOR THESE REASONS
(If necessary.)

## ADDITIONAL COMMENTS OR FINDINGS CONCERNING INFORMATION IN PRESENTENCE REPORT
(If necessary.)

## ADDITIONAL REASONS FOR DEPARTING FROM THE GUIDELINE RANGE
(If necessary.)

Defendant's Soc. Sec. No.:  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

Defendant's Date of Birth:  4/16/61

Defendant's Residence Address:
New River Valley Regional Jail
P. O. Box 1067
Dublin, VA  24084

Defendant's Mailing Address:
Same as Above

May 13, 2004
Date of Imposition of Judgment

Signature of Judge

James P. Jones, Chief United States District Judge
Name and Title of Judge

5/14/04
Date Signed

A TRUE COPY, TESTE:
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

```
   BECG8  607.00 *        MALE CUSTODY CLASSIFICATION FORM      *      06-08-2006
PAGE 001 OF 001                                                        11:36:06

        REGNO: 19393-058              FORM DATE: 06-08-2006          ORG: BEC
(A) NAME....: CONKLIN                 ERIC          KAVE
DES FACL/LEV: BEC        /MEDIUM      MGTV: NONE
PUBSFTY: NONE                         MVED:


(B) DETAINER: (0) NONE                SEVERITY.......: (3) MODERATE
MOS REL.....: 29
PRIOR.......: (3) SERIOUS             ESCAPES........: (0) NONE
VIOLENCE....: (3) 5-10 YRS MINOR      PRECOMMT STATUS: (0) N/A


(C) TIME SERVED.....: (4) 26-75%      DRUG/ALC ABUSE.: (2) PAST 5 YRS
MENT/PSYCH STABILITY: (4) FAVORABLE   TYPE DISCIP RPT: (5) NONE
FREQ DISCIP REPORT..: (3) NONE        RESPONSIBILITY.: (2) AVERAGE
FAMILY/COMMUN TIES..: (4) GOOD


========================= LEVEL AND CUSTODY SUMMARY ========================
BASE  CUST  VARIANCE  SEC TOTAL   SCORED LEV MGMT SEC LEVEL   CUSTODY  CONSIDER
+9    +24    -1        +8         LOW        N/A              IN       DECREASE

(D) TYPE REVIEW    NEW CUSTODY   APPROVED:    YES    NO   NEXT REVIEW: 6-2007
    REGULAR          MAX
    EXCEPTION        IN        CHAIRPERSON SIGNATURE....:
                     OUT        WARDEN/DESIGNEE SIGNATURE
                     COM          FOR EXCEPTION REVIEW:
```

REASON(S) FOR NOT FOLLOWING FORM'S RECOMMENDATION:

Will request pop mgtv.


```
COPY: CENTRAL FILE, SECTION TWO
       INMATE


   G5149      INMATE/DESIG FACL LEVEL MISMATCHED, HAVE REGION ADD A MGTV
   G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



GOVERNMENT EXHIBIT 1 - Attachment 3

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5800.11
**DATE:** September 8, 1997
**SUBJECT:** Inmate Central File, Privacy Folder, and Parole Mini-Files

1. <u>PURPOSE AND SCOPE</u>.  The Bureau of Prisons maintains complete information on all inmates confined in Bureau institutions. Staff use the Inmate Central File, Privacy Folder, and Parole Mini-file to maintain pertinent information regarding a detainee, unsentenced and sentenced offenders.

The Bureau of Prisons has had numerous policy sources on all facets of the Inmate Central File System.  This Program Statement consolidates many of these sources for easier reference.  This issuance sets forth guidelines in the following areas:

 a. Inmate Record Functions,
 b. Inmate Central Files,
 c. Standardization of Inmate Central File Material,
 d. Maintenance, Security, and Access Responsibilities and Procedures,
 e. Routine Uses of Inmate Central File,
 f. Disclosure of Inmate Central File Materials,
 g. Inmate Review of Inmate Central File,
 h. Documentation of Oral Disclosure,
 i. Transfer of Records Between Bureau Facilities,
 j. Requests for Forwarding of Inmate Files,
 k. Retirement of Inmate Central File, and
 l. Parole Mini-files.
 m. Pretrial Inmate File Material/Immigration & Naturalization Service (INS) Detainees

2. <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

 a.  Inmate files will be maintained with complete information on each inmate confined in a Bureau of Prisons institution.

 b.  U.S. Parole Mini-Files will be completed and accessible to the U.S. Parole Commission for all inmates specified in this Program Statement.


GOVERNMENT EXHIBIT 2

    (1)   initial review of all current files of the inmate
          population;
    (2)   receipt of inmate requests to review files, and the
          monitoring of the inmate review of files; and
    (3)   screening of all records and documents in the future as
          they are sent to the Inmate Central File for filing.

Each institution may adopt its own procedures and forms for submitting and acknowledging requests and for logging and scheduling Inmate Central File reviews.

b.  <u>Inmate Request and Review</u>.  Any inmate seeking to look at his/her Inmate Central File shall submit a request to a staff member, as designated in the local instruction.

- The inmate's request should be acknowledged.
- The inmate should be permitted to review the file whenever practicable.
- All file reviews must be done under constant and direct staff supervision.
- Those materials which have been determined to be non-disclosable shall be removed from the folder before inmate review.
- An entry shall be made on the Inmate Activity Record (BP-381) to show the date the inmate reviews the file. The staff member monitoring the review shall initial the entry and the inmate shall be asked to initial it.

c.  <u>Inmate Challenge to Information</u>.  An inmate may challenge the accuracy of the information in his or her Inmate Central File.  Unit team staff shall take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified.  The inmate is required to provide staff with sufficient information in support of a challenge (names of persons to contact, government agency, etc...).

When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct.

For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided.  **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**

If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the challenged document.  Staff shall file this information in the

applicable section of the Inmate Central file, and also make a
notation on the Inmate Activity Record form (BP-381) to ensure
that future decisions affecting the inmate are not based on the
discredited information.

When the USPO verifies that the information in the PSI is
indeed inaccurate, as claimed by the inmate, staff should
subsequently review, and where indicated, correct Bureau
generated reports or data such as the Inmate Load and Security
Designation form (BP-337), the Custody Classification form
(BP-338), Progress Report, and any other reports that may have
been based on the PSI.  Bureau reports, data, or SENTRY
transactions should be corrected within a reasonable period of
time after identification as being inaccurate.

If the information source will provide a corrected document or
data, it should be immediately inserted in the file or data base
and the inaccurate information or document removed.  A notation
on the Inmate Activity Record form should acknowledge the
insertion of the corrected information or document.

    d.  Inmate Copies.  Any inmate who wishes to receive copies of
disclosable materials from the file shall submit a request to
institution staff.  Within a reasonable time after the request,
institution staff shall provide the inmate copies of requested
disclosable documents maintained in the Inmate Central File.
Fees for the copies are to be calculated in accordance with the
Program Statement on Release of Information.

    e.  Privacy Folder.  Records which have been determined, under
separately issued guidelines, to be excluded from inmate review
shall be placed in the Privacy Folder.  Normally, actual
placement of documents in the Inmate Central File is the Unit
Secretary's responsibility.  The Privacy Folder shall be placed
on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in
the Inmate Central File, they are routed to an appropriate staff
member the Warden designated.  The Case Manager shall review the
materials, to ascertain whether to place them in the regular
sections, the Privacy Folder, or discard them.  Any document to
be excluded from inmate review must be stamped "FOI EXEMPT".  At
each Program Review and before an inmate reviews his/her Inmate
Central File, the Case Manager shall review the file to ensure
the proper location of forms and purge outdated or unnecessary
forms and/or documentation.

    f.  Parole Files.  Parole Mini-files, examiner packets, and
pre-hearing assessments are not disclosable unless specifically
authorized by the U.S. Parole Commission.  The Parole Mini-file
and other hearing materials must be removed from the Inmate
Central File prior to inmate review.  The inmate may seek review



**U.S. Department of Justice**
**Federal Bureau of Prisons**

# Program Statement

| | |
|---|---|
| **OPI:** | CPD/CPB |
| **NUMBER:** | P5100.08 |
| **DATE:** | 9/12/2006 |
| **SUBJECT:** | Inmate Security Designation and Custody Classification |

1. **PURPOSE AND SCOPE.** This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system. The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.

The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b). All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

2. **PROGRAM OBJECTIVES.** The expected results of this Program Statement are:

   a. Each inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement; and,

   b. Staff will systematically and objectively review an inmate's classification making the environment in which they are housed safer for both inmates and staff while protecting the public from undue risk.

3. **SUMMARY OF CHANGES.** This revision incorporates Executive Staff decisions 03-04-05 and 99-03-03, as well as other procedural changes such as the movement of most designation/redesignation functions (04-08-17) to the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas.

   a. The scoring item "Type of Prior Commitment" has been replaced with "Criminal History Score." (Chapter 4, Page 8 and Chapter 6, Page 5)



GOVERNMENT EXHIBIT 3

removal by either the Executive Office for Immigration Review (EOIR), or the Bureau of Immigration and Customs Enforcement (ICE), formerly the Immigration and Naturalization Service (INS); and,

- cannot be removed from the country for various reasons.

**MANAGEMENT SECURITY LEVEL (MSL).** Management Security Level is the security level assigned by the DSCC Administrator or designee to an inmate upon application of any of the following Management Variables:

- PSF Waived;

- Greater Security; and,

- Lesser Security.

Based on these Management Variables, the Management Security Level will normally be one security level greater or lesser than the scored security level.

**MANAGEMENT VARIABLE.** A Management Variable (MGTVs) reflects and supports the professional judgment of Bureau staff to ensure the inmate's placement in the most appropriate level institution. A Management Variable(s) is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score — a score which may not completely/accurately reflect his or her security needs.

**MAXIMUM CUSTODY.** The highest custody level assigned to an inmate requiring the highest level of security and staff supervision. An inmate with **MAXIMUM** custody requires ultimate control and supervision. This classification is for individuals who, by their behavior, have been identified as assaultive, predacious, riotous, serious escape risks, or seriously disruptive to the orderly running of an institution. Accordingly, quarters and work assignments are assigned to ensure maximum control and supervision. A custody change to or from **MAXIMUM** custody must be justified thoroughly on the BP-338 form and maintained permanently in the Inmate Central File.

**MISDEMEANANT.** An inmate convicted of an offense for which the maximum penalty is one year or less. Such inmates may not be transferred to a High security institution without first signing a waiver. 18 U.S.C. § 4083 prohibits placement of such inmates in "penitentiaries" without their consent; however, the Bureau broadens that prohibition to include any High security institution. A sample of the waiver is provided in Appendix B.

| CODE | MGTV - DESCRIPTION |
|------|--------------------|

**A**        **None.**  No Management Variables apply.  Institution staff are permitted to enter this item.

**B**        **Judicial Recommendation.** The sentencing court may recommend a specific institution or program.  When consistent with policies or when such actions are consistent with sound correctional management, the Bureau of Prisons attempts to satisfy judicial recommendations.  When this is not feasible, the court is notified in writing with an explanation outlining the reasons for not satisfying that recommendation.

**D**        **Release Residence.**  The Bureau of Prisons attempts to place each inmate in an institution that is reasonably close to the anticipated release area.  Ordinarily, placement within 500 miles of the release area is to be considered reasonable, regardless of whether there may be an institution closer to the inmate's release area. This MGTV may also apply to inmates who are within 36 months of release.

**E**        **Population Management.**  Situations may occur in which an inmate requires housing in a facility which is not commensurate with his or her security level.  Following are example situations: facility activation; population pressures affecting available appropriate-level bed space within 500 miles of the inmate's anticipated release residence; gang/security concerns.

**G**        **Central Inmate Monitoring Assignment.**  Pursuant to the CIM Program Statement, some inmates, for specified reasons, need to be monitored or separated from others. Sometimes these special management concerns limit the options for placement.

**I**        **Medical or Psychiatric.**  An inmate who has a history of or is presently exhibiting psychiatric problems may need an initial designation to a psychiatric referral center.  Similarly, documented information reflecting that the inmate may need medical or surgical treatment may require a designation to a medical referral center. Designations and redesignations of these inmates will be made by the Central Office Medical Designator.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **ERIC K. CONKLIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-155 (RBW)** |
| ) | |
| **U.S. BUREAU OF PRISONS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## ORDER

 UPON CONSIDERATION of the Defendant's Motion to Dismiss, the grounds stated

therein, and opposition thereto, and the entire record in this matter, it is by the Court this

_____ day of _____, 2007, hereby

 ORDERED that the Motion be and hereby is granted; and it is

 FURTHER ORDERED that the Complaint is dismissed with prejudice.


_____
REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE