UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN, Pro Se,      )
    Plaintiff,            )
                           )
                           )
v.                             )   Case No. 07-155(RBW)
                           )
                           )
                           )
U.S. BUREAU OF PRISONS,        )
    Defendant.             )

RECEIVED
APR 1 8 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RESPONSE TO THE DEFENDANT'S
MOTION TO DISMISS

    **COMES NOW** the Plaintiff, Eric K. Conklin, pro se, in response to the Defendant's Motion to Dismiss and the Memorandum of Points and Authorities in Support.

    As to the Motion to Dismiss, Plaintiff objects thereto. However, as set forth in the Memorandum in Support, as an alternative to denying Defendant's Motion, Plaintiff asks the Court to defer its decision thereto, to order Plaintiff's discovery be produced and to allow Plaintiff adequate time following receipt of said discovery to craft a dispotive motion Plaintiff truly believes will be acceptable to Defendant.

    As to Defendant's Motion, Plaintiff objects to Defendant's

assertions that the Court lacks subject matter jurisdiction, that Plaintiff failed to state a claim on which relief can be granted, and that Plaintiff failed to state a claim for relief pursuant to the Privacy Act.

Plaintiff takes notice and offers thanks to Defendant's Attorney for pointing out Plaintiff's obligations vis-a-vis Defendant's Declaration. Plaintiff intends to adhere to such advice the notice portends.

Respectfully submitted this the 16 day of April, 2007.

ERIC KAVE CONKLIN, Pro Se
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this Response to Defendant's Motion to Dismiss has been placed, postage prepaid, in the inmate mail system at FCI-Beckley to AUSA Darrell C. Valdez, U.S. Attorney's Office located at 555 Fourth Street, NW, Washington, DC 20001, on this the 16 day of April, 2007.

ERIC KAVE CONKLIN, Pro Se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN, Pro Se,  )
    Plaintiff,  )
                )
                )
v.                 )    Case No. 07-155(RBW)
                )
                )
U.S. BUREAU OF PRISONS,  )
    Defendant.  )

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

The Defendant, the U.S. Bureau of Prisons, by its Attorney filed a motion to dismiss claiming:

1. This Court lacks subject matter jurisdiction to hear Plaintiff's complaint;

2. Plaintiff's complaint fails to state a claim on which relief can be granted; and,

3. The complaint fails to state a claim for relief pursuant to the Privacy Act.

## I. STATEMENT OF THE CASE

Generally, Defendant's Statement of the Case is correct. However, it contains material omissions and harmless inaccuracies.

A. Defendant states Plaintiff was sentenced to a 60-month term of imprisonment for violation of 18 U.S.C. §924(c). Defendant fails to state that Plaintiff was also sentenced consecutively to that violation, to a 12-month sentence for violation of 18 U.S.C. §922(g)(1), knowingly possessing a firearm, in or affecting interstate commerce, after previously having been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Plaintiff's actual sentence totals 72-months.

B. Plaintiff asserts in the complaint more than the fact that inaccurate information contained in Defendant's files adversely affected his custody score, thus precluding his transfer to a lower security institution as alleged by Defendant. As detailed in the complaint, Plaintiff also asserts that the BOP refused, on multiple occasions, to correct, amend or even to attempt to cause their records to be amended despite Plaintiff's repeated attempt to cause BOP staff to abide by the requirements of the Privacy Act, and that, to date, Plaintiff's file remains inaccurate.

## II. THE COURT'S JURISDICTION

A. DEFENDANT'S CLAIM PETITIONER FAILED TO FILE THE COMPLAINT WITHIN THE PRIVACY ACT'S TWO YEAR STATUTE OF LIMITATIONS IS INCORRECT.

Defendant correctly establishes that the Privacy Act provides that any action brought under Title 5 U.S.C. §552a(g)(1)(C) (not §522 as detailed in Defendant's memorandum), must be brought "within two years from the date on which the cause of [the] action arises[]." 5 U.S.C. §552a(g)(5), however;

1. Defendant simply assumes the "cause of action" arose in June 2004. Such is not the case. Almost immediately upon arrival at USP Leavenworth, Plaintiff began questioning his being classified to a high security level institution. In April 2005, Plaintiff's custody was adjusted and in August, 2005, he was transferred to the medium security facility, FCI-Beckley. Subsequent to his arrival at FCI-Beckley, Plaintiff discovered ~~his Central File had not been changed at Leavenworth~~ and contained inaccuracies. For purposes of the instant matter, the date on which the cause of this action arises is not in 2004, but no earlier than Plaintiff's arrival at FCI-Beckley in September, 2005.

2. Defendant appears to believe that the Privacy Act's

limitation requirement requires that the matter be brought to the courts within two years from the date the action arises. The Privacy Act requires that any individual seeking judicial redress must first exhaust his or her administrative remedies. **Crooker v. United States Marshals Service**, 577 F.Supp. 1217 (1983, DC Dist Col),(5 U.S.C. §552a(g)(1). On March 24, 2006, well within the limitation period argued by Defendant and only six months after Plaintiff's arrival at FCI-Beckley and becoming aware his Central File still contained errors, Plaintiff took the initial step required in the administrative remedy process by filing with his Counselor an informal request for remedy known at FCI-Beckley as a BP-8½. Six days later, after denial of the BP-8½, Plaintiff filed his initial formal request for administrative remedy, a BP-9. On April 18, 2006, Plaintiff agreed to informally resolve the initial BP-9 in concert with the institution's Case Management Coordinator ("CMC"). Plaintiff agreed to the informal resolution based on the CMC's promise to have the custody calculations changed to reflect the corrections requested. Twenty-one days later, on May 09, 2006, Plaintiff restarted the administrative remedy process by filing a second BP-8½, and on May 20, 2006, a second BP-9 because the agreed changes had not been completed.

4

The second administrative remedy process concluded on October 2, 2006, upon Plaintiff's receipt of the BOP-National Office's denial. Plaintiff promptly filed the instant complaint on December 26, 2006, by placing the complaint in the inmate mail system that very afternoon.

As documented herein Plaintiff;

1. initiated his internal administrative remedy process on March 24, 2006, well within the two-year limitation period required by the Privacy Act;

2. contends that the "cause of action" in the instant complaint occurred on or after September 15, 2005, the date on which he arrived at FCI-Beckley. For it was after his arrival that Plaintiff learned that errors in his Central File remained.

Regardless of the date this Court determines to be the date of the "cause of action", Plaintiff brought the action within the two-year limitation set by the Privacy Act.

3. While the alleged inaccurate information occurred at the time of sentencing, Plaintiff did not know and had no reason to know in either May or June, 2004 that

5

the incorrect information in his PSI would be used by the BOP for classification purposes. At the time of sentencing, Plaintiff believed the PSI to be nothing more than a tool for the sentencing judge in his sentencing deliberations. Plaintiff had not previously been a federal prisoner and, therefore, had no way of knowing that the BOP utilized the PSI for custody purposes. As soon as Plaintiff became aware the BOP was utilizing incorrect information (the date causation under the Privacy Act became known) was following his arrival at FCI-Beckley in September, 2005.

Plaintiff clearly initiated his complaint under the Privacy Act in a timely manner regardless of the date the Court rules to be the date Plaintiff determined the cause of action in the instant matter. Therefore, this Court has jurisdiction to take up the matter.

B.  **PLAINTIFF'S REQUEST FOR AMENDMENT OF THE RECORD IS NOT MOOT.**

Plaintiff's complaint against the BOP is not moot. While the Plaintiff's custody classification was changed in June 2006, his Central File records were not. Unless and until Plaintiff's Central File records are corrected, the BOP has not complied with the Privacy Act. Further, as admitted by Defendant, "when a custody classification score changes [], the old custody classification records are destroyed." See Defendant's Memorandum,

6

page 7, lines 12-14; such works both ways. Until and unless the Plaintiff's Central File is corrected, it remains possible, even likely, that a different case manager, upon review of Plaintiff's Central File, will determine the June 2006 classification score to be incorrect and will redo same based on the incorrect information still in Plaintiff's Central File. Such would result in an increase in Plaintiff's custody classification and the destruction of the correct classification records.

Clearly, until the Central File record is corrected, Plaintiff's request to amend the record cannot ever be moot.

III. **PLAINTIFF'S COMPLAINT DOES NOT FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

A. Defendant correctly states that the Privacy Act allows an agency's Director to exempt records from any part of the Act, with certain exceptions. As Defendant asserts, the Justice Department and the BOP have established regulations that exempt the Inmate Central Record System.

Plaintiff contends that the BOP's actions result not in the exemption of certain records, rather such opts the BOP out of the entire Privacy Act for purposes of its dealings with inmates. Such exemptions deny all federal prisoners access to the courts through

the Privacy Act and is not in keeping with the intent of Congress.

The Inmate Central Record System contains any and all records the BOP maintains for each of the near quarter-million federal inmates. To exempt an inmates records in toto means the BOP is unconcerned about the accuracy of all inmate records. The intent behind congressional passage of the Privacy Act was to demand of the federal bureaucracy that in their dealings with the Nation's citizenry, the accuracy of records maintained by the bureaucracy must be afforded paramount importance. To completely opt out of the Act in regards to the BOP's dealings with the vast majority of the citizenry with which the agency deals is tyrannical. This Court should not allow the BOP to circumvent the intent of Congress by choosing to arbitrarily exempt itself from the requirements of the Privacy Act in its dealings with federal inmates.

The Act states that in order to exempt files under the Act, the agency must show that the requested documents are investigatory records compiled for law enforcement purposes, and that release of the material would have at least one of the six adverse consequences specified in the Act.

Defendant quotes 5 U.S.C. §552a(j)(2) in the Defendant's memorandum. For purposes here, the relevant sections of this statute quoted by Defendant are as follows:

8

if the records are "maintained [] and which consists of [] reports identifiable to an individual compiled at any stage of the process of enforcement of criminal laws from arrest to indictment through release from supervision."

Subsequent to conviction, any records created that are identifiable to an individual are not a part of the "enforcement of criminal laws." Such enforcement ended at conviction. As such, the PSI and all custody classification records play no function in the enforcement of criminal laws. Beginning with the PSI, documents identifiable to Plaintiff that were compiled by the U.S. Probation Office ("USPO") and the BOP were for purposes of determining sentencing factors (the PSI) and enforcement of the sentence imposed by the court. These records have no part in the function of enforcing criminal laws.

In the final paragraph of page eight of the Defendant's Memorandum, it alleges that Plaintiff seeks to amend or expunge his PSI. Such is not the case. At no time has Plaintiff asked either the BOP or this Court to expunge his PSI, or his custody classification records. Plaintiff has asked that his Central File be corrected so that all future use of information contained in his Central File utilizes correct information. Plaintiff addresses hereinbelow a methodology he believes will be acceptable to the parties that will accomplish the goals intended by the Privacy Act.

B.  THE BOP DID NOT TAKE APPROPRIATE ACTION WHEN INFORMED OF THE INACCURATE INFORMATION.

Defendant maintains that by recalculating Plaintiff's custody classification the agency took appropriate action, such is not the case. As argued previously, and as admitted by Defendant, the Plaintiff's custody classification record is but a temporary Central File record. Such record is destroyed upon the issuance of a new classification record.

The only appropriate action the BOP can take is to amend Plaintiff's Central File in a permanent manner. (See hereinbelow).

C.  PLAINTIFF MAY OR MAY NOT BE ENTITLED TO MONETARY DAMAGES.

Defendant spends four complete pages arguing that Plaintiff is not entitled to monetary damages. Plaintiff leaves it to this Court to decide the question.

Plaintiff did not bring the instant complaint to recover monetary damages. The complaint was filed for the purpose of causing the BOP to correct its records regarding him. Plaintiff will accept, without question, the Court's decision in this regard.

## IV. CONCLUSION AND RECOMMENDATION FOR POSSIBLE DISPOTIVE PROCESS.

A. CONCLUSION

For the reasons set forth herein, Plaintiff respectfully asks the court to either deny Defendant's Motion to Dismiss, or, in the alternative, to defer a decision to allow Plaintiff the opportunity to implement the recommendation set out below.

B. RECOMMENDATION TO ALLOW PARTIES TO REACH AGREEMENT ON A DISPOTIVE METHODOLOGY.

As stated herein, Plaintiff's goal in the instant complaint is to cause his Inmate Central File maintained by the BOP to be corrected. Toward that end, Plaintiff proposes the following:

1. That at the end of this process, the BOP agree to place in Plaintiff's Central File, a memorandum by the parties that corrects Plaintiff's BOP records on a permanent basis.

2. In order to achieve the resolution proposed above, Plaintiff asks that the Court order the discovery requested by his previously filed Motion for Discovery. The requested discovery is necessary in order to insure that the resolution to the instant matter set out below is complete and final. With discovery Plaintiff believes

he will be able to craft a memorandum which addresses any and all errors contained in the Central File. Without the requested discovery, it will be impossible to identify any other errors that should be corrected in the BOP's files.

3. Upon receipt of said discovery, Plaintiff will furnish Defendant with a draft memorandum he proposes be included in his Central File. Plaintiff commits to utilize his best efforts in negotiating the final wording of such memorandum and will fully cooperate with Defendant towards that end.

4. Once an understanding has been reached between the parties, Plaintiff will file a dispotive motion with the Court.

Respectfully submitted on this the 16 day of April, 2007.

*[signature]*
ERIC K. CONKLIN, Pro Se
Reg. # 19393-058
P.O. Box 350
FCI-Beckley
Beaver, WV 25813

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN,   )
    Plaintiff,   )
                )
v.   )   Case No. 07-155(RBW)
                )
U.S. BUREAU OF PRISONS,   )
    Defendant.   )

DECLARATION OF ERIC K. CONKLIN

Pursuant to Title 18 U.S.C. §1746, I, the undersigned, do hereby declare the following to be true and correct to the best of my knowledge:

1. I am Eric K. Conklin, inmate number 19393-058 housed at the Federal Correctional Institution, Beckley, located in Beaver, West Virginia.

2. On November 9, 2006, I reviewed, and am, therefore, familiar with the records maintained in my Inmate Central File.

3. I am familiar with BOP Program Statement Number 5100.08, Dated September 12, 2006, and titled, "Inmate Security Designation and Custody Classification." In the first section of the statement it states that "This Program Statement provides policy and procedures regarding the [ ] inmate classification system."

4. I am currently classified for placement at a low security facility but remain housed at the Beckley medium security facility due to population management issues at BOP low security institutions.

5. Paragraph five of the Declaration of Darrell Lennon is incorrect. My Inmate Central File and, to the best of my knowledge, the SENTRY online information system indicates I was sentenced to a term of 72-months of imprisonment by the federal district court on May 13, 2004, not the 60-month term stated in the Lennon Declaration. I was sentenced to 12 months for a violation 18 U.S.C. §922(g)(1) and to a

      statutorily mandated consecutive 60 months for violation of 18 U.S.C. §924(c).

6. Considering future Good Conduct Time credits, my projected release date is November 27, 2008.

7. I have alleged that incorrect information in my Presentence Investigation Report ("PSI") has been used in making decisions by BOP staff regarding me.

8. That one such use of the incorrect information in the PSI was in determining my current custody and security classification.

9. I also allege that its likely my Central File contains other errors which can be identified upon receipt of the requested discovery.

10. Paragraph eight of the Lennon Declaration is incorrect. In June, 2004, the inaccurate information in my PSI was utilized by the Mid-Atlantic region's Community Corrections Manager's staff to make my initial custody and security classification. Such resulted in my misclassification to the high security level institution, the United States Penitentiary ("USP") in Leavenworth, Kansas.

11. Paragraph nine of the Lennon Declaration gives an incorrect exegesis as to the BOP policy set out in Program Statement 5800.11. This Statement states that the BOP staff member receiving the complaint **"shall"** contact the USPO. Mr. Lennon was required by policy to contact the USPO. He did not. There are no caveats in the policy. Mr. Lennon failed to abide by the policy.

12. Paragraph ten of the Lennon Declaration is incorrect. I personally raised the issue of the incorrect information contained in my PSI with Mr. Lennon in early December, 2005. He took no action. Frustrated, I wrote the USPO myself on January 16, 2006, more than 30 days after notifying Mr. Lennon of the PSI errors. The USPO's response, dated February 27, 2006, was received by me in early March, 2006. Mr. Lennon still had taken no steps to attempt resolution of the matter.

13. Following receipt of the USPO's denial letter, I mentioned it to Mr. Lennon. He asked for and was furnished a copy. This was more than three months following my notifying him of the inaccuracies, making Mr. Lennon's declaration in paragraph ten inaccurate.

14. Paragraph 12 of the Lennon Declaration is deceptive. Due to Mr. Lennon's failure to address the problem, I initiated available administrative remedies on March 24, 2006,

2

by filing what is commonly referred to as a BP-8½. On March 30, 2006, I filed the formal request, a BP-9. On April 18, 2006, during a meeting with the Case Manager Coordinator ("CMC"), I agreed to informally resolve the BP-9. In Exchange, CMC Hamrick issued instructions to his subordinate, Mr. Lennon, to recalculate my custody/security classification without utilizing the incorrect information. Mr. Lennon appears to be attempting to convince the Court that it was through his benevolence my classification was recalculated.

15. Despite being ordered by his superior and subsequently chided by me, Mr. Lennon failed to do the reclassification. On May 9, 2006, I began a new administrative remedy process by filing a second BP-8½. On May 20, 2006, a second BP-9 was filed. Finally, in June, 2006, Mr. Lennon did reclassify me.

16. Realizing that such recalculation of my custody classification does not alter my Central File (as the custody classification report is not a permanent record and is destroyed as soon as a new report is issued—see paragraph 17 of the Lennon Declaration), I proceeded with the administrative remedy process seeking a permanent resolution. The BP-10 to the Mid-Atlantic Regional Office was sent on June 16, 2006, followed by a BP-11 to the BOP Central Office on July 28, 2006. All efforts resulted in denials. The National Office denial was received on October 2, 2006, giving rise to the complaint filed in district court in December, 2006.

17. Paragraph 15 of the Lennon Declaration is incorrect. As set forth in Item Twelve above, Mr. Lennon was informed of the errors in my Central File at least ninety days prior to his statement. In addition, his statements regarding his "willingness" to alter my classification "despite the lack of evidence", are recklessly untrue. Mr. Lennon was ordered by his superior to change the classification. Mr. Lennon has no idea what evidence was presented to CMC Hamrick, as Mr. Lennon was not in attendance.

18. CMC Hamrick agreed to cause my reclassification due to the fact my Plea Agreement conflicted with the inaccuracies contained in the PSI. Namely, my Plea Agreement stated no weapon was brandished, contradicting the PSI.

19. Paragraph 16 of the Lennon Declaration is incorrect. First, I was not "given the benefit of the doubt." My Plea Agreement offered adequate proof to CMC Hamrick to order the custody change.

20. As stated in paragraph 17 of the Lennon Declaration,

3

custody classification records are not a permanent Inmate Central File record.

21. Since the classification record is not a permanent file record, my Inmate Central File has not been altered to reflect the correct information. As such, no true resolution of the matter has been achieved. Only a perpetual entry to my Central file will accomplish the required resolution.

22. The BOP's action in recalculating my custody classification without use of the incorrect PSI information constitutes de facto affirmation that the PSI information in question is inaccurate.

23. Correction of the Central File seems to me to be an elementary process. A memo acknowledging the relevant inaccuracy(ies) can simply be made a permanent part of my Central File.

24. I believe it highly likely other errors are contained in my BOP Central File. With the requested discovery, such determination can be accurately made.

25. I do not have personal possession of copies of the following documents:

   A. The BP-8½ filed originally in early March, 2006.

   B. The informal resolution I signed with CMC Hamrick on April 18, 2006.

All other relevant documents make up the Exhibits to the Complaint filed with the Court.

I declare under penalty of perjury that the foregoing Declaration is true and correct to the best of my knowledge.

Executed on this the 16 day of April, 2007.

ERIC K. CONKLIN, Pro Se
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I have caused to be mailed, a true and correct copy of the foregoing Response to the Defendant's Motion to Dismiss and the Declaration of Eric K. Conklin by placing both in the inmate mail system at FCI-Beckley to the following:

    AUSA Darrell C. Valdez
    U.S. Attorney's Office
    555 Fourth Street, N.W.
    Washington, DC 20001

on this the 16 day of April, 2007.

*/s/ Eric K. Conklin*

ERIC K. CONKLIN, Pro Se
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813