UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
JUL - 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ERIC K. CONKLIN, Pro Se,    )
        Plaintiff,          )
                            )
                            )
v.                          )   Case No. 07-cv-155(RBW)
                            )
                            )
                            )
U.S. BUREAU OF PRISONS,     )
        Defendant.          )

---
THIRD SUPPLEMENTAL PLEADING
---

COMES NOW, Plaintiff with a third supplemental pleading in order to inform the Court of the following:

1. On June 14, 2007, Plaintiff received a "Response to Inmate Request to Staff Member" dated June 14, 2007 under the signature of James Michael Hamrick, Case Manager Coordinator. See, <u>Exhibit 1</u>, hereto;

2. Mr. Hamrick's response states that Plaintiff's "Current Offense Score" is to be changed back to "Greatest Severity" due to the fact the BOP is again utilizing the incorrect information contained in Plaintiff's Central File;

3. On June 18, 2007, Defendant filed Defendant's Supplement to Defendant's Motion to Dismiss, withdrawing the govern-

ment's claim that Plaintiff's complaint was moot. Accompanying Defendant's supplemental pleading was the Declaration of James Michael Hamrick, the Case Management Coordinator at FCI-Beckley. Hamrick is also signatory to Exhibit 1 hereto.

4. Both Exhibit 1 and Hamrick's Declaration contain inaccuracies and misstatements. Even more foretelling is the fact both documents utilize factual omissions to seemingly plead Defendant's claims.

5. Since filing a response to Plaintiff's complaint, Defendant has;

   A. unilaterally declared null and void the informal resolution of Plaintiff's initial Request for Administrative Remedy. Such agreement and informal resolution was reached following an approximate one-hour meeting between Hamrick and Plaintiff on April 18, 2006;

   B. unilaterally declared null and void the written concurrances of FCI-Beckley's then Warden Felts, the Mid-Atlantic Regional Office and the General Counsel's Office of the BOP's Central Office as to the details of the informal resolution of April 18, 2006; and,

   C. recanted numerous statements and claims made to this Court

in previous case filings.

6. Defendant's actions following the filing of Defendant's Motion to Dismiss in response to Plaintiff's complaint have;

   A. had prejudicial impact on Plaintiff's situation;

   B. made clear the need for judicial intervention in the instant case; and,

   C. made clear the need for judicial intervention in the broader issue raised in Plaintiff's court filings, namely, the question as to the legality and appropriateness of the United States Bureau of Prisons' action in exempting the agency from governance under the Privacy Act in all matters regarding federal prisoners.

## THE INSTANT CASE

On April 18, 2006, the Parties hereto reached an agreement concerning the use of the information contained in Plaintiff's PSI regarding Plaintiff's purported brandishing and/or threatening use of a firearm. The details and events which brought forth such agreement are as follows;

1. On April 18, 2006, Plaintiff was summoned to a meeting with CMC Hamrick, in Hamrick's office. The meeting lasted for

approximately one hour;

2. the professed purpose of the meeting—as explained by Hamrick—was to attempt to reach an informal resolution as to Plaintiff's previously filed Request for Administrative Remedy (BP-9);

3. During the meeting, Hamrick placed a series of telephone calls in the presence of Plaintiff. According to Hamrick, at least one of those calls resulted in a lengthy and detailed discussion of the matter with a senior member of the Mid-Atlantic Regional Office's staff;

4. Hamrick informed Plaintiff at that time that he had obtained Regional Office concurrence to his proposal to no longer use the PSI information claimed to be incorrect by Plaintiff; and,

5. Hamrick explained that the basis for the decision to no longer use the disputed information in the PSI to make determinations regarding Plaintiff, was the fact that said information was in direct and total conflict to the admissions made by the United States in Plaintiff's Plea Agreement.

Based on Hamrick's statements and assertions during the April 18, 2006 meeting, Plaintiff agreed to informally resolve and withdraw the BP-9. As set forth hereinbelow, on June 9,

4

2006, the then FCI-Beckley Warden issued a written concurrence with the informal resolution. Subsequently, on June 22, 2006, and October 2, 2006, the Mid-Atlantic regional office and the BOP Central Office, respectfully, filed their written concurrences. See, **Exhibit H, pages H-4**, **H-8** and **H-11** to the complaint and **Plaintiff's Second Supplemental Declaration**, filed in conjunction with this pleading.

Good conscience dictates immediate judicial intervention in the instant case, as well as the application of the equitable doctrine of estoppel. Defendant's actions since filing the motion to dismiss demand such.

As to the application of the doctrine of estoppel in the instant case, Plaintiff states the following:

1. Estoppel In Pais is an estoppel which arises out of a person's statements of fact, or out of the person's silence, acts or omissions, rather than from a deed or record or written contract;

2. At the time the Parties reached an informal resolution agreement on April 18, 2006, the Defendant acknowledged;

   A. that a conflict existed between Plaintiff's Plea Agreement and the PSI;

   B. that the Plea Agreement, a senior document to the PSI,

5

    contains admissions by the United States that refute the unsubstantiated statements contained in the PSI;

  C.  that the disputed statements contained in the PSI are those of non-law enforcement persons and, as such, carry a low degree of veracity; and,

  D.  that the disputed PSI statements are hearsay in nature.

3. Estoppel, also known as issue preclusion, is a bar which precludes a person from denying the truth of a fact which, in contemplation of law, became settled by the facts and proceedings, or by the acts of the party, either by conventional writing, or by representations, expressed or implied. Estoppel applies to this case as follows;

  A.  Defendant, by its recent actions and filings with this Court, is denying the truth of the facts that became settled on April 18, 2006, resulting in Plaintiff agreeing to informally resolve the initial BP-9 filed regarding the matter at hand;

  B.  by its actions subsequent to April 18, 2006, Defendant has acknowledged the truth that the PSI contains incorrect information regarding Plaintiff. Such actions include;

    i)  subsequent to the April 18, 2006 meeting by the Par-

        ties, Defendant recalculated Plaintiff's custody score without utilizing the incorrect information in Plaintiff's PSI;

  ii)  on June 6, 2006, then Warden Felts issued his written concurrence to the agreement reached by the Parties on April 18, 2006. "[A]s your unit team told you, they will not hold you accountable for threatening with a firearm because the [PSI] was simply quoting a third party, and your PSI does not state that you should be held accountable for threatening with a firearm." See, **Exhibit H** page **H-4**, ¶2 to the complaint;

  iii)  on June 22, 2006 the Regional Director for the Mid-Atlantic Region, in response to Plaintiff's appeal of Warden Felt's denial of Plaintiff's second request for administrative remedy, concurred in writing, stating, "We find no reason to depart from the decision made by the institution." See, **Exhibit H**, page **H-8**, ¶2 to the complaint;

  iv)  on October 2, 2006, the BOP Central Office also concurred in writing, stating, "[o]ur review indicates the Warden and Regional Director adequately responded to the issue raised in your appeal." See **Exhibit H**, page **H-11**, ¶2 to the complaint; and,

  v) on April 25, 2007, Defendant again recalculated Plaintiff's security/custody points without utilizing the incorrect information in Plaintiff's PSI.

 C. by its representations, both expressed and implied, Defendant has demonstrated clearly the truth of the fact the PSI contains information that should not be used when making determinations regarding Plaintiff.

 As set forth herein, this Court, by invoking the doctrine of estoppel, should immediately order Defendant to cease utilizing the incorrect information contained in Plaintiff's PSI when making determination regarding Plaintiff.

4. By its actions, Defendant has demonstrated blatant disregard for the spirit of the Privacy Act, as well as the congressional intent that is the foundation of the Act. The Privacy Act was enacted so as to insure that governmental agencies treat citizens fairly. Defendant, by continuing to utilize information which it knows is, and previously acknowledged to be incorrect, to make determinations regarding Plaintiff is clearly inappropriate and illegal; and,

5. Plaintiff again asserts that there exists a high degree of likelihood that Plaintiff's BOP maintained Central File contains other instances of incorrect information which Defendant is utilizing to make adverse determinations regard-

ing Plaintiff. As such, Plaintiff again renews his request that this Court order Defendant to produce the discovery requested.

### AS TO DEFENDANT'S REFUSAL TO BE GOVERNED BY THE PRIVACY ACT

The Privacy Act allows directors of governmental agencies to exempt certain records from any part of the Act. The Act does not authorize an agency to outright exempt itself from governance by the Act. Yet, that is what the United States Department of Justice and the Bureau of Prisons has done by establishing regulations that exempt the entirety of the BOP maintained Inmate Central Record System from the Act.

The Defendant, by its lawful mission, deals with only two classifications of citizens; the agency's employees and the individuals sentenced to terms of imprisonment by federal courts. In regards to federal inmates, Defendant maintains both paper and electronic files that together constitute the Inmate Central Record File.

The Privacy Act allows Defendant to exempt certain records within its files from governance by the Act. Exempting the entirety of the Plaintiff's Central File effectively allows Defendant to ignore the Privacy Act in all matters regarding citizen-inmates. Such exemption also denies all federal prisoners—approximately a quarter million citizens—access to the courts

under the Privacy Act. Such exemption is not authorized by the Act and surely is not in keeping with the intent of Congress underpinning the Act.

Plaintiff argues the inappropriateness of Defendant's attempt to exempt the agency from governance under the Privacy Act in Plaintiff's Response to the Defendant's Motion to Dismiss and will not repeat those arguments herein. Rather, Plaintiff points out to the Court that Defendant's actions, both following reaching an informal resolution with Plaintiff on April 18, 2006 and since the filing of the instant complaint emphatically sustains Plaintiff's argument that Defendant cannot be allowed to fully exempt itself from the law as codified within the Privacy Act.

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully asks the Court to deny Defendant's Motion to Dismiss, to immediately order Defendant to cease utilizing the disputed PSI information when making determinations regarding Plaintiff, to order the United States to produce the oft requested discovery and to grant Plaintiff an evidentiary hearing on the instant matter.

REspectfully submitted on this the 25th day of June, 2007.

ERIC K. CONKLIN, Pro Se
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813

10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN, Pro Se,          )
      Plaintiff,                )
                                )
                                )
v.                                )   Case No. 07-cv-155(RBW)
                                )
                                )
                                )
U.S. BUREAU OF PRISONS,           )
      Defendant.                )


### SECOND SUPPLEMENTAL DECLARATION

In accordance with the provisions of §1746 of Title 28, United States Code, I, the undersigned, do hereby make the following declarations:

1. I am the Plaintiff in the matter now before this Court titled, **Conklin v. U.S. Bureau of Prisons**, 1:07-cv-00155(RBW);

2. I am currently a federal prisoner, Register Number 19393-058, confined to FCI-Beckley in Beaver, West Virginia;

3. I have read and am familiar with both the Declaration of James Michael Hamrick ("Declaration") and Hamrick's signed response to my request to staff (Exhibit1);

4. On April 18, 2006, not as alleged in Item 4 of the Hamrick Declaration, a decision was made to re-score my custody/security classification without consideration given to the incorrect information contained in my Central File maintained by the Defendant;

5. While it is possible to couch the decision to re-score as a local decision, as stated in Item 4, Hamrick fails to state in his Declaration that;

   A. On April 18, 2006, I was meeting with Hamrick, in his office, in an effort to achieve an informal resolution to my initial request for Administrative Remedy regarding the incorrect information being utilized by the BOP to make determinations in my regard;

   B. During that meeting, Hamrick placed at least four telephone

1

calls, in my presence, during the approximate one-hour meeting;

C. During some of those calls, Hamrick discussed, in detail, matters related to my custody/security calculation, specically the conflict between information contained in my PSI and admissions made by the United States in my Plea Agreement;

D. Hamrick informed me that at least one of those calls was to staff at the BOP's Mid-Atlantic Regional Office;

E. The Regional Office agreed that the Plea Agreement admissions by the government, which contradict the information contained in the PSI, carried more legal weight;

F. The statements contained in the PSI were unsubstantiated statements made by non=law enforcement persons and, therefore, carried less validity;

G. Jointly, Hamrick and Region agreed to score my custody/security without considering the incorrect information in the PSI; and,

H. As a result of the meeting, I informally resolved my request for administrative remedy before leaving Hamrick's office.

6. Concluding the April 18, 2006 meeting, Hamrick said he would telephone my Case Manager, giving him instructions to recalculate my custody/security level without consideration given to the incorrect information in the PSI. Hamrick also instructed me to forward a Cop-Out (Request to Staff Member) to Case Manager Lennon, informing him of the decision and requesting my custody/security calculation be redone immediately. Hamrick instructed me to get back to him in one week if Lennon had not done the recalculation;

7. On April 19, 2006, I personally handed Lennon the Hamrick directed Cop-Out;

8. On April 21, 2006, I asked Lennon the status of the recalculation effort. I was informed he had spoken with Hamrick and to get with him (Lennon) on Monday;

9. On Tuesday, April 25, 2006, I was finally able to catch Lennon only to be told he had not done the new calculation, that he could not do it this day and that if he did not get done by Friday, April 28, 2006, he would not be able to get to it until the week of May 8, 2006, due to his upcoming vacation;

10. On May 2, 2006, I forwarded a Cop-Out to Hamrick informing

2

him that it had been fourteen days since reaching the informal resolution, and that Lennon had failed to redo the scoring;

11. On May 12, 2006, at my request, Ms. B. Fox, my Unit Manager instructed me to get with her on Monday and that she would correct the problem then;

12. During the week of Monday, May 15, 2006, the following occurred:

    A. Monday, when Fox was not around, Lennon told me he would put me on a call-out for the following day in order to meet so that we can resolve the situation;

    B. Tuesday, No Fox, No Lennon, No call out;

    C. Wednesday, Fox was unable to meet with me that morning, telling me to have my supervising officer at my work assignment call her so that she could instruct my movement back to the housing unit to meet with her. CO Banes refused to call Fox;

    D. Thursday, out of frustration, I attempted to file a new request for administrative remedy. Counselor Koch told me to see him on Saturday; and,

    E. On Saturday, May 20, 2006, I formally filed the second request for administrative remedy regarding the BOP's use of the incorrect information. This BP-9 was the initial step in the administrative remedy process that gave rise to the instant matter.

13. On May 30, 2006, Lennon told me he was going to change my custody/security calculation;

14. I took no action between May 30, 2006, and July 19, 2006, allowing the BP-9 to make its way through the system;

15. On July 20, 2006, eighty-three days after informally resolving my initial BP-9, Lennon completed the recalculation. The result of this rescoring lowered my custody level from medium to low security;

16. On September 12, 2006, BOP Program Statement 5100.08 became effective. The purpose of the new policy was to change the methodology of the inmate custody/security classification scoring system;

17. On March 12, 2007, during my semi-annual Program Review, Unit manager Fox instructed Lennon to immediately recalculate my custody/security points (under the new policy). Believing (correctly) I would now qualify for minimum security designation and transfer, Lennon was told to put me in for Butner

3

    Federal Prison Camp immediately after redoing the custody/ security claculation and to get me shipped there before May 1, 2007;

18. During the period of March 26, 2007 and May 6, 2007, on four occasions I met with Lennon concerning my recalculation and transfer to FPC-Butner. Each time, he said he would get to it right away;

19. On May 7, 2007, 384 days after informally resolving my initial BP-9 at the conclusion of my April 18, 2006 meeting with Hamrick, Lennon delivered to me a new custody classification form showing me to now be minimum security and qualified for camp placement;

20. Subsequent to May 7, 2007, Lennon submitted transfer documentation to FCI-Beckley senior staff, seeking management approval for my transfer, not to FPC-Butner, but to FPC-Beckley; and,

21. On June 14, 2007, I was informed by Hamrick that I would not be transferred and that my custody/security classification was again going to be redone and the incorrect information contained in the PSI would once again be used to make adverse decisions in my regard.

    I declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

6-25-07
DATE

ERIC K. CONKLIN
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813

4

EXHIBIT 1

## Response to Inmate Request to Staff Member

Inmate Name: Conklin, Eric                                June 14, 2007
Reg. Number: 19393-058

---

Your Inmate Request to Staff received June 6, 2007, regarding the scoring of your current offense has been reviewed. Specifically, you indicate that a BP9 filed in April 2006 changed your offense score from greatest to moderate.

I realize that your offense score was changed from greatest to moderate severity in June 2006. However, to ensure you receive an accurate current offense score, I have consulted the Mid-Atlantic Regional Office. According to them, you should be scored for Greatest Severity. This is because the statements in your PSI regarding you threatening individuals with weapons were made by numerous people, the statements were not objected to at sentencing and the PSI was adopted as factual by the sentencing court. In addition, the Probation Office was contacted and they indicated the information in the PSI would not change.

If you have any questions or concerns, please see me at mainline.

Mike Hamrick,
Case Management Coordinator

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that true and correct copies the foregoing Third Supplemental Pleading and the attached Second Supplemental Declaration have been sent via first class U.S. mail to the following:

    AUSA Darrell C. Valdez
    U.S. Attorney's Office
    555 Fourth Street, N.W.
    Washington, DC 20001

on this the 25th day of June, 2007.


_____
ERIC K. CONKLIN, Pro Se