## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ERIC K. CONKLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-155 (RBW) |
| ) | |
| U.S. BUREAU OF PRISONS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## THIRD SUPPLEMENTAL PLEADING

Plaintiff has filed a Third Supplemental Pleading arguing that the Bureau of Prisons is

estopped from recalculating his custody classification score based on information he believes to

be inaccurate in his PSI.

After Plaintiff informally requested that the prison facility re-classify his custody

placement, his case manager decided, in June 2006, to re-score Plaintiff's custody classification

without taking into account information in Plaintiff's Pre-Sentence Investigation Report ("PSI")

that he alleged was inaccurate.  Not satisfied with this action, Plaintiff sent an administrative

appeal to the Warden, who denied the appeal because there was no present controversy to be

resolved.  Def. Exh. 4 (attached hereto).[1]  Plaintiff then filed an appeal with the Regional Office

of the Bureau of Prisons, who denied his appeal finding that the Bureau of Prisons did not have

---

[1]    In his Supplemental Pleading, Plaintiff describes the Warden's decision as a
"written concurrence with the informal resolution."  Plaintiff's Third Supplemental Pleading at 7.
A plain reading of the decision clearly demonstrates that the Warden made no such concurrence,
nor did he make any promise to Plaintiff.  See Def. Exh. 4.  Rather, the Warden merely found
that there was no basis for further administrative action.  Id

authority to depart from the Pre-Sentence Investigation Report.  Def. Exh.5.[2]  Still not satisfied,

Plaintiff appealed to the Central Office of the Bureau of Prisons, who also denied his appeal

finding that the Bureau of Prisons did not have authority to depart from the Pre-Sentence

Investigation Report.  Def. Exh. 6.[3]  Plaintiff then filed this civil action on January 22, 2007.  See

generally Complaint (Dkt. No. 1).

 In June 2007, Plaintiff was being considered for placement at the Federal Prison Camp at

Beckley.  However, to ensure his custody classification score was accurate the Mid-Atlantic

Regional Office was contacted.  The Mid-Atlantic Regional Office determined that the alleged

inaccurate information should be considered in scoring Plaintiff's custody classification.  See

Hamrick Decl. attached to Defendant's Supplemental Memorandum (Dkt. No. 18).

 Plaintiff's claim that the Bureau of Prisons is estopped from changing the June 2006

determination that the information would not be used in calculating his custody classification

score lacks merit.  Principles of promissory estoppel apply less broadly against the federal

government than they might in situations involving only private actors.  See Heckler v.

Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 (1984) ("it is well settled

---

[2] Plaintiff also quotes the decision by the Regional Office out of context in order to create the mis-impression that the Regional Office agreed with the local case manager's decision to ignore the allegedly incorrect information.  Plaintiff's Third Supplemental Pleading at 7.  In truth, the "institution" that the Regional Office agreed with was the United States Probation Office, who denied Plaintiff's request to change his Pre-Sentence Investigation Report.  Def. Exh. 5.

[3] Likewise, Plaintiff quotes the decision by the Central Office out of context in order to create the mis-impression that the Central Office agreed with the local case manager's decision to ignore the allegedly incorrect information.  Plaintiff's Third Supplemental Pleading at 7.  Like the Regional Office, the Central Office agreed with was the United States Probation Office, who denied Plaintiff's request to change his Pre-Sentence Investigation Report, and found the denials of his previous appeals to be appropriate.  Def. Exh. 6.

that the Government may not be estopped on the same terms as any other litigant"); Kizas v.

Webster, 707 F.2d 524, 535 (D.C. Cir.1983) ("courts have consistently refused to give effect to

government-fostered expectations that, had they arisen in the private sector, might well have

formed the basis for a contract or an estoppel").  Plaintiff must prove:  (1) the existence of a

promise; (2) that the government expected appellants to rely on the promise by taking definite

and substantial action or forbearing from such action; (3) actual detrimental reliance by

appellants; and (4) that the promise must be enforced to avoid injustice.  Robbins v. Reagan, 780

F.2d 37, 53 (D.C. Cir. 1985).

       "Assuming *arguendo* that promissory estoppel or equitable estoppel is available against

the Government, it is nonetheless clear that these doctrines require the element of reasonable

reliance."  Weisberg v. U.S. Dept. of Justice, 745 F.2d 1476, 1494 (D.C. Cir. 1984) (*citing*

Restatement (Second) of Contracts, § 90 (1981) ("A promise which the promisor should

reasonably expect to induce action or forbearance on the part of the promisee or a third person

and which does induce such action or forbearance is binding if the injustice can be avoided only

by enforcement of promise."); and Heckler, 467 U.S. at 59 ("the party claiming estoppel must

have relied on its adversary's conduct 'in such a manner as to change his position for the worse'

and that reliance must have been reasonable ...."")).  Here, Plaintiff cannot demonstrate reliance to

his detriment upon any alleged promise.  Plaintiff made no change in his actions or position that

otherwise was detrimental to his position.  Indeed, in the face of the alleged promise, Plaintiff

continued with the administrative process by appealing the matter to the Warden, then to the

Regional Office, and then the Central Office.  After each of those entities denied his appeals,

Plaintiff filed this present civil complaint.  See Exhibits E, F, G, and H attached to Complaint.

Plaintiff even noted in his Request for Administrative Relief, filed one month after the alleged

promise by the case manager, that informal resolution "was not" accomplished.  Exhibit G

attached to Complaint.  Thus, Plaintiff's own actions demonstrate that he did not rely upon the

actions of the case manager.

Moreover, before the doctrine of promissory estoppel may be applied against the

Government, Plaintiff must demonstrate that the employee who allegedly made the promise had

"actual authority" to bind the Government.  See Federal Crop Insurance Co. v. Merrill, 332 U.S.

380, 385-86 (1947).  To bind the government, the employee must have been delegated specific

authority either by Congress or regulation, City of El Centro v. United States, 922 F.2d 816, 820

(Fed. Cir. 1990), or must have such authority as an integral part of the duties assigned to him.  H.

Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989).  Authority cannot be

"inferred" from the absence of an express limitation on authority, but instead must be explicitly

delegated. City of El Centro, 922 F.2d at 820.  In the present matter, Plaintiff cannot demonstrate

that a case manager at a local facility can bind the Bureau of Prisons with respect to an inmate's

classification, especially where that local classification is subject to review by more specialized

Correctional Program Specialists at the regional level.  While local officials make the initial

determination as to what information will be used in scoring an inmate's custody classification

score, there are experts in custody classification issues within the Bureau of Prisons' established

chain of command.  The experts include a Regional Senior Correctional Program Specialist, who

functions as the regional expert in unit/case management issues and is responsible for providing

technical guidance in an array of complex issues to region and institution staff, as well as a

Regional Correctional Programs Administrator who oversees and administers case management,

unit management and correctional program activities for the region. See Def. Exh. 7, attached

hereto. These experts, along with others within the Bureau of Prisons' established chain of

command, have the authority to overturn the local decisions of the case managers.

Finally, Plaintiff cannot demonstrate that any alleged promise must be enforced to avoid

injustice. First, it is clearly established that prisoners do not have a right to a particular

placement or classification while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97

S.Ct. 274, 50 L.Ed.2d 236 (1976). Second, pursuant to Bureau of Prisons' Program Statement

5100.08, Inmate Security Designation and Custody Classification, an inmate's custody

classification is reviewed every 12 months, although reviews may be conducted earlier, and an

inmate's custody classification level may be changed for various reasons during an inmate's

incarceration. P.S. 5100.08, Cpt. 1, p. 3 and Cpt. 6, p. 1, attached as Def. Exh. 8. Estopping the

Bureau of Prisons from allowing officials to review custody classification decisions and change

custody classification determinations when errors in judgment have been made is a dangerous

proposition. If the Bureau of Prisons erroneously calculates an inmate's custody classification

score, the Bureau of Prisons clearly has the authority to correct that error and should be permitted

to do so.

Because Plaintiff has not relied to his detriment on any decision by the facility case

manager as to how to calculate his custody classification, and because Plaintiff has no right to a

particular custody classification without periodic and supervisory review, the Bureau of Prisons

cannot be estopped from adjusting Plaintiff's custody classification.

The remainder of Plaintiff's argument regarding the Privacy Act and the exemption of

records fails to cite any legal or factual support. For the reasons set forth in its Reply to

Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. No. 16), including the specific

citations to the Privacy Act that provide for the authority to exempt the records at issue, as well

as the Plaintiff's failure to comply with the statute of limitations, this matter should be dismissed.

Respectfully submitted,


/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


/s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

## <u>CERTIFICATE OF SERVICE</u>

I certify I caused copies of the foregoing Defendant's Response to Plaintiff's Third

Supplemental Pleading to be served by first class mail upon *pro se* plaintiff at:

Eric K. Conklin
No. 19393-058
FCI - Beckley
P.O. Box 350
Beaver, WV 25813

on this 12th day of July, 2007.


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ
Assistant United States Attorney

**REQUEST FOR ADMINISTRATIVE REMEDY**                    **BEC-414529-F1**

Your Request for Administrative Remedy received May 25, 2006, has been reviewed. Specifically, you contend items 8 & 9 in your Presentence Investigation Report (PSI) are incorrect. You also contend the Bureau of Prisons is using this incorrect data in making decisions regarding your public safety factor rating.

Our review reveals the United States Probation Office has already responded to your claim that your PSI is inaccurate. In a letter dated February 27, 2006, they state, "The Honorable James P. Jones, Chief United States District Judge, found the information in the presentence report as fact. Therefore, no changes will be made." However, as your unit team told you, they will not hold you accountable for threatening with a firearm because the probation officer was simply quoting a third party, and your PSI does not state that you should be held accountable for threatening with a firearm.

Based on this review, I can find no basis for further administrative action. Your request for Administrative relief is partially granted. If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Mid-Atlantic Region, 10010 Junction Drive, Suite 100-North, Annapolis Junction, Maryland 20701, within twenty (20) calendar days of the date of this response.

_____6\9\06_____
Date

_____Charles T. Felts, Warden_____

DEFENDANT'S
EXHIBIT
4

# Regional Administrative Remedy Appeal
# Part B - Response

**Date Filed: June 22, 2006**                    **Remedy No.: 414529-R1**

You appeal the Warden's response to your Request for
Administrative Remedy.  You allege information in your Pre-
Sentence Investigation Report (PSI) is inaccurate and request
your PSI be corrected.

The Bureau of Prisons does not have the authority to modify your
PSI.  Per Program Statement 5800.11, <u>Inmate Central File,
Privacy Folder, and Mini-Files</u>, if an inmate challenges
information in the PSI, staff should inform the appropriate U.S.
Probation Office (USPO) in writing of the disputed information,
and request that a written response also be provided.  On
February 27, 2006, the USPO wrote to you and advised you
that the court had adopted the PSI as fact, so it would
not be changed.  We find no reason to depart from the decision
made by the institution.

Your appeal of the Warden's response is denied.  If you are
dissatisfied with this response, you may appeal to the General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534.  Your appeal must be received in the
General Counsel's Office within 30 days from the date of this
response.

JUL 1 8 2006

_____
Date

_____
K. M. White
Regional Director
Mid-Atlantic Regional Office



RECEIVED
JUL 2
WARDEN'S OFFICE
FCI BECKLEY

DEFENDANT'S
EXHIBIT
5

**Administrative Remedy No. 414529-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you contend your Presentence Investigation Report
(PSI) contains inaccurate information.  You request to have your
PSI corrected "to reflect the truth without contradictory hearsay
statements."

Our review indicates the Warden and Regional Director adequately
responded to the issue raised in your appeal.  Program Statement
(P.S.) 5800.11, <u>Inmate Central File, Privacy Folder, and Parole
Mini-Files</u>, states an inmate may challenge the accuracy of
information in his central file and is required to provide staff
with sufficient information in support of a challenge (i.e.,
names of persons to contact, government agency, etc.).  P.S.
5800.11 also states that if an inmate challenges information in
the PSI, staff should inform the appropriate U.S. Probation
Office (USPO) in writing of the disputed information, and request
that a written response also be provided.

Our investigation revealed that, in response to your challenge to
information in your PSI, you have already been informed in
writing by the U.S. Probation Office that the information in your
PSI was adopted as fact by the Sentencing Court and no changes
will be made.  The Bureau of Prisons does not have the authority
to make changes to the PSI.  Therefore, we concur with the
responses provided and find them appropriate.

Your appeal is denied.

_____
10/2/2006
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

DEFENDANT'S
EXHIBIT
6

DEFENDANT'S
EXHIBIT
7

## POSITION DESCRIPTION

### Correctional Program Officer
### (Regional Correctional Programs Administrator)
### GS-006-14

## INTRODUCTION

The incumbent is the Regional Correctional Programs Administrator for a region within the Federal Bureau of Prisons (BOP).  Under the general direction of the Deputy Regional Director, the incumbent is actively involved in long range and strategic planning.  He/she evaluates programs that may be substantive for other regional staff.  The incumbent serves to execute the mission of the regional office which is to provide supervision, direction and related managerial functions for the BOP.  The incumbent is responsible for policy implementation, planning, directing and coordinating operations to provide services that meet unit/case management and correctional program requirements to accomplish the institutions' missions.

## MAJOR DUTIES AND RESPONSIBILITIES

The incumbent oversees and administers case management, unit management and correctional program activities for the region.

Plans, coordinates and implements delegated functions for correctional programs.

Regularly visits institutions for inspections, advisory and investigative purposes concerning areas of responsibilities.

Consults with wardens and top staff members to provide program guidance and furtherance of meaningful interaction to achieve a viable correctional program.

Manages an allocated portion of the regional office budget, ensuring fiscal responsibility.  Reviews the utilization of positions, personnel and all operational aspects of regional and institutional activities for correctional programs.

Administers and evaluates the regional case management services.  Supervises the final review and submission of all observation and study cases for the Federal Courts.  Responsible for the final review of referrals of special offenders, including contractual boarders.

Monitors the handling of inmate mail, inmate classification and pre-parole programs.

Monitors and coordinates congressional inquires concerning inmate management.

Provides advisory and informational services to other law enforcement agencies and public officials.

Presents and describes the BOP's correctional philosophy/goals and expectations via public speaking engagements, training program development/presentation and public relation affairs.

Supervises an office staff of correctional program specialists  and administrative personnel.

Analyzes inmate needs, evaluates inmate programs and contrasts this data in establishing new units and/or converting existing units.

Manages the Inmate Financial Responsibility Program and closely monitors the participation level of inmates by reporting trends nationally.

Acts as Deputy Regional Director when delegated and serves as regional duty officer on a rotating basis.

Coordinates/develops staff training in case management at the field, regional and national level, including staff training at the Management and Specialty Training Center (MSTC).

Supervisory work and related managerial responsibilities constitute a major duty and requires accomplishment of work through the combined technical and administrative direction of subordinate employees.

Supervisory functions comprise a range of duties which include planning, organizing and reviewing work, administering personnel matters, and dealing effectively with employees and union representatives regarding employee-management concerns.  Specific supervisory responsibilities may include assigning, directing and reviewing the work of subordinates; evaluating work performance; identifying training needs; recommending selections, promotions, awards, disciplinary or other actions; planning, scheduling and coordinating the work of the unit; giving advice and counsel to employees; hearing and resolving employee complaints and grievances; and determining the material, equipment, and facilities needed to perform the work.

If the position exercises managerial authorities, duties may include directing the work of an organizational unit, being held  accountable for its success, and monitoring its progress toward meeting goals.  Typical managerial responsibilities may include
determining program goals and monitoring/evaluating the progress  in meeting goals; determining resource needs and making adjustments in objectives, work plans and commitment of resources; determining the need for and developing plans for  organizational changes; assessing program impact at the local level as well as on the organization as a whole; determining policy in such areas as program emphasis and operating guidelines; and administering general personnel policy regarding matters of significant importance.

The incumbent of this position is a law enforcement officer and occupies a position with secondary law enforcement retirement coverage.

As an employee of the BOP, this position meets the definition of being in the law enforcement field and is administrative in nature.  Administrative positions are defined as executive, managerial, technical, semiprofessional, or professional positions for which experience in a primary law enforcement position, or equivalent experience outside the federal government, is a mandatory prerequisite.

Incumbent is responsible for developing policy, providing expert advice in an area of correctional specialty, or to provide guidance, direction, supervision, advice and/or evaluation for a program or programs in correctional facilities.

This secondary position's prerequisite experience was gained in a primary position which has a maximum initial appointment age of 36 in accordance with 5 U.S.C. 3307.

The incumbent may be called on to perform as a law enforcement officer in a correctional environment during

training, emergency situations, and in times of staff shortages. Such assignments will involve frequent and direct contact with inmates and subject the incumbent to arduous, adverse and stressful working conditions.

A prerequisite of this position is the completion of "Institution Familiarization", and completion of a mandatory course in "Introduction to Correctional Techniques". The training emphasizes self-defense, firearms, security, hostage situations, suicide prevention, and CPR.

## FACTOR 1 - KNOWLEDGE REQUIRED BY THE POSITION

The incumbent must be able to serve in a consultive, advisory and informative capacity to the Regional and Deputy Regional Director. To be effective in this capacity, he/she must have general knowledge of Civil Service and General Accounting office policies and regulations; must have knowledge of legislation and national programs affecting operation of the BOP. Incumbent has and must be able to manage considerable autonomy in carrying out responsibilities.

Must possess the general ability and insight to ensure universal quality control for the discipline.

Must be able to function as a trainer and/or speaker upon brief notice.

Must be able to keep abreast of policy changes and to effectively communicate these to field facilities, resolving any difficulties that may arise.

Is able to develop Program Review Guidelines and monitor implementation levels for acceptability.

Upon request, is able to objectively assess staff at the regional and field level, with quality objectivity.

Incumbent must have experience as a law enforcement officer in a correctional facility which included primary responsibility for the detention, direction, supervision, inspection, training, employment, care and transportation of inmates incarcerated in these facilities.

Incumbent must have a thorough knowledge and understanding of the mission and goals of the BOP.

Incumbent must have the knowledge, skills and abilities to perform law enforcement functions in response to emergencies throughout the BOP.

Incumbent must have knowledge of the variety of institutions, inmate populations and the resulting problems presented by the various combinations in order to effectively carry out primary responsibilities of directing and evaluating operating programs in field institutions.

## FACTOR 2 - SUPERVISORY CONTROLS

Incumbent's performance is appraised by the Deputy Regional Director and reviewed by the Regional Director. The expectation is the incumbent will function with a high degree of latitude in planning/scheduling work, solving complex problems and transmitting a quality product in a responsive manner.

## FACTOR 3 - GUIDELINES

Manages the regional population control in congruence with applicable policy. Scrutinizes soundly and articulates Program Statements, Institution Supplements, CFR's, Sentry and utilizes other resource personnel to fully implement correctional programs and corresponding activities.

```
When significant problems are encountered or deviations are required,
incumbent uses initiative and ingenuity to interpret these overall policies
and guidelines to ensure proper proposals and solutions to resolve specific
situations.  Guidelines will not exist for every situation encountered and
the incumbent must develop solutions to issues of major importance.
Judgement is required in analyzing and evaluating data, preparing
justifications and identifying sources.
```

Incumbent must exercise judgement in adapting current or developing new guidance to meet the mission and security concerns of the BOP.

## FACTOR 4 - COMPLEXITY

Due to the expertise and expansive knowledge required, the inherent duties of this position are highly complex. Actions taken by the incumbent may have far-reaching effects based on the degree of interaction with other agencies, public officials, the Courts, etc. Care must always be taken to represent the BOP appreciably.

Because of the nature and mission of this position, incumbent must have a thorough understanding of the operating problems involved in working within an institution.

## FACTOR 5 - SCOPE AND EFFECT

Incumbent will avidly inspect/evaluate actions to ensure projections favorably impact correctional programs and the BOP. Keeps the Regional and Deputy Regional Director apprised of any likely adverse implications.

The incumbent is responsible for developing policy, providing advice, guidance, training, or evaluation of institution programs. The policy must be consistent with Federal statue, Federal rules, accepted Federal law enforcement practice, and is effective in managing the safety of inmates and staff and the security of institutions.

These duties and responsibilities have an impact on field operations Bureau-wide.

This position serves in direct support of the primary mission of the BOP which is to protect society by confining inmates in a controlled environment.

## FACTOR 6 - PERSONAL CONTACTS

Incumbent freely interacts with persons/agencies that may cross boundaries, including judicial and political strata. Extreme care is expanded in terms of approach/impact made as a representative of the BOP. Contacts are with all levels of management within the BOP, as well as with officials of other federal and state agencies.

The duties, at times, may require frequent and direct contact with individuals in confinement who are suspected of or convicted of offenses against criminal laws of the United States, as described in Title 18 of the U.S. Criminal Code.

Incumbent may have frequent contacts with institution staff, correctional staff outside the BOP, and/or other public officials.

## FACTOR 7 - PURPOSE OF CONTACTS

Contacts are made to build rapport and execute the mission of the BOP. Contacts are made for exchanging information, coordinating work efforts and plans, assessing programs, providing technical advice and guidance, and resolving problems.

Contacts with inmates are for the purpose of providing training, care, rehabilitation, custody and/or control.

Other contacts may occur for the purpose of providing policy guidance, advice and/or training.

## FACTOR 8 - PHYSICAL REQUIREMENTS

The incumbent expends routine physical energy in the execution of duties. However, these duties often warrant extensive travel and
in the case of inmate unrest, a higher level of physical activity may be required. Overall, the work is primarily sedentary.

On occasion the incumbent may be asked to perform as a law enforcement officer in a correctional environment. He/she must
be physically able to respond to disturbances and emergencies, which may include the restraint of inmates.

## FACTOR 9 - WORK ENVIRONMENT

The incumbent's duties are effectuated in an office setting and includes the field, region and Central Office. Aside from this, audits are conducted at various field sites within the region and may include other regions to attend training, task forces and conferences.

The incumbent may be called on to perform law enforcement functions in a correctional environment in response to institutional disturbances, for training purposes, or during staff shortages. In these instances, the

incumbent may be subject to arduous, adverse, and stressful working conditions to include hostage situations and the possibility of inmate disturbances.

**MOBILITY STATEMENT**

Effective accomplishment of the mission of the BOP frequently requires geographic relocation of supervisory and managerial personnel to meet the legitimate needs of the Bureau and to better use the skills of available staff. Accordingly, the incumbent is subject to these provisions and is susceptible to geographic relocation at the discretion of management in the interest of the efficiency of the service.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

# Program Statement

| | |
|---|---|
| **OPI:** | CPD/CPB |
| **NUMBER:** | P5100.08 |
| **DATE:** | 9/12/2006 |
| **SUBJECT:** | Inmate Security Designation and Custody Classification |

1. **PURPOSE AND SCOPE.** This Program Statement provides policy and procedure regarding the Bureau of Prisons inmate classification system. The classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society.

The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b). All classification, designation and redesignation decisions are made without favoritism given to an inmate's social or economic status.

2. **PROGRAM OBJECTIVES.** The expected results of this Program Statement are:

   a. Each inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement; and,

   b. Staff will systematically and objectively review an inmate's classification making the environment in which they are housed safer for both inmates and staff while protecting the public from undue risk.

3. **SUMMARY OF CHANGES.** This revision incorporates Executive Staff decisions 03-04-05 and 99-31-03, as well as other procedural changes such as the movement of most designation/redesignation functions (04-08-17) to the Designation and Sentence Computation Center (DSCC), Grand Prairie, Texas.

   a. The scoring item "Type of Prior Commitment" has been replaced with "Criminal History Score." (Chapter 4, Page 8 and Chapter 6, Page 5)



**DEFENDANT'S EXHIBIT 8**

P5100.08
9/12/2006
Page 2

b.  A new scoring item for inmate "Age" has been added. (Chapter 4, Page 12 and Chapter 6, Page 8)

c.  A new scoring item for "Education Level" has been added. (Chapter 4, Page 12 and Chapter 6, Page 8)

d.  The "Drug/Alcohol Abuse" scoring item has been added to the BP-337 and has moved from Section C (Custody Scoring) of the BP-338 to Section B (Base Scoring) of the BP-338. (Chapter 4, Page 13 and Chapter 6, Page 9)

e.  The "Mental/Psychological Stability" scoring item has been discontinued.

f.  The "Responsibility Demonstrated" scoring item has been replaced with "Living Skills" and "Program Participation." (Chapter 6, Page 10)

g.  Instructions for scoring the "Family/Community Ties" scoring item have been clarified.  (Chapter 6, Page 13)

h.  The floor for the Violent Behavior PSF has been reduced from High to Low Security. (Chapter 5, Page 9)

i.  New cutpoints and a new Custody Variance Table have been developed.  (Chapter 1, Page 2 and Chapter 6, Page 15)

j.  An expiration date for the Greater Security Management Variable has been added.  (Chapter 5, Page 5)

k.  The criteria for the Deportable Alien PSF has been clarified.  (Chapter 5, Page 9)

l.  Text has been added that formalizes the Bureau's past and current practice of continually assessing the effectiveness of its inmate classification process. (Program Statement Section 6)

m.  Text has been added that encourages DSCC staff to consider using a Management Variable when designating inmates where age is largely the contributing factor in the inmate's placement. (Chapter 5, Page 5)

n.  Text has been revised that requires the entry of supporting information in the BP-337 "REMARKS SECTION" when there is Pre-Sentence Investigation Report information relevant to that scoring item. (Chapter 4, Page 13)

P5100.08
9/12/2006
Page 3

o.  The DSCC Administrator will ensure that designation/
redesignation decisions are applied consistently on a bureau-wide
basis.  (Chapter 4, Page 14)

p.  DSCC staff must contact the sentencing court if a Statement
of Reasons is not received at the time a request for designation
is made.  (Chapter 3, Page 1)

q.  Inmates who currently qualify for unescorted transfer may
be transported by family members via POV from one camp to another
camp.  (Chapter 7, Page 8)

r.  The appendices on Sentence Procedures, Institutions
Missions and Parolable Institutions have been removed from the
manual, but will be available on the CPB website.

s.  The Offense Severity Scale, Definition of Roles involved in
Drug Offenses and the Special Instructions appendices have been
combined into one appendix.

t.  All transfer requests under codes 309 - Disciplinary and
323 - Close Supervision will be directed to the Designation and
Sentence Computation Center.  "W REDES C" has been eliminated and
"W REDES D" has been changed to "W REDES R" to reflect routine
redesignations.  (Chapter 7, Page 2)

u.  The female versions of the BP-337 and BP-338 have been
discontinued although certain policies and procedures specific to
female offenders are maintained i.e. security levels, cutpoints,
Public Safety Factors and Management Variables.

v.  The "Release on Own Recognizance" scoring item has been
discontinued.  (Chapter 4, Page 5)

w.  The description of Management Variable "U" has been revised
to include all long-term detainees.  It no longer applies solely
to Mariel Cuban Detainees.  (Chapter 5, Page 4)

x.  The medical transfer code descriptions were revised to
include "Level of Care" language.  (Chapter 7, Pages 21-22)

y.  The criteria for the Prison Disturbance PSF has been
clarified.  (Chapter 5, Page 10)

P5100.08
9/12/2006
Chapter 6, Page 1

## CUSTODY CLASSIFICATION FORM INSTRUCTIONS (BP-338)

**INTRODUCTION.**  Custody classification is a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment.  An inmate's custody level is an indication of how much staff supervision an inmate requires within and beyond the confines of the institution.

An inmate's first custody classification will be scored at the first program review following initial classification (approximately 7 months after arrival at an institution). Subsequent reviews will occur at least every 12 months, but may be conducted earlier in order to enable progress toward community activities. Custody classification will ordinarily occur every 12 months at a regularly scheduled program review.  Only changes which increase or decrease the overall security level assignment of the inmate, i.e. FRP refuse, incident report(s), new sentence, sentence reduction etc., should be scored outside of the 12 month cycle.

When transferring to another institution, inmates normally retain their custody assignments.  If the custody level is inconsistent with that authorized at the receiving institution, the sending institution will change the inmate's custody prior to transfer. Holdovers will retain their initial custody level assignments until their first regularly scheduled custody review at their designated facility for service of sentence.

At each annual custody review, a new Custody Classification Form (BP-338) will be completed, even though the scoring elements may not have changed from the previous form.  Only the most current BP-338 form will be retained in the Inmate Central File, except for those forms that must be retained to document appropriate review and approval for custody reductions (e.g., custody reductions for exception cases require the Warden, or designee, to sign the Custody Classification Form.  The form should be maintained to document the review and approval).  As set forth in the definition of "Maximum" custody, Chapter 2, a BP-338 form changing an inmate's custody to or from "Maximum" custody must be permanently maintained.

It should be clearly understood that the Custody Classification Form only recommends an inmate's custody.  The Unit Team and/or Warden is the final review authority.  The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.  Custody changes are not

dictated solely by the point total.  However, when the Unit Team decides not to follow the recommendation of the point total, they must document the reason(s) for this decision in writing on the Custody Classification Form, and inform the inmate.