UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN,
  Plaintiff,

v.           Case No.:07-155(RBW)

U.S. BUREAU OF PRISONS,
  Defendant.

RECEIVED
AUG - 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PLAINTIFF'S REPLY TO
DEFENDANT'S RESPONSE TO
PLAINTIFF'S THIRD SUPPLEMENTAL PLEADING

**COMES NOW**, Plaintiff, pro se, in reply to Defendant's Response to Plaintiff's Third Supplemental Pleading, to which Plaintiff states the following:

1. Notwithstanding Defendant's opening statement in the second paragraph of page one, the process that has brought the parties before this Court did not "magically" resolve itself as a result of an informal request by Plaintiff to FCI-Beckley staff. Nor did "his Case Manager decide", **Response**, pg.1, ln.5, to rescore Plaintiff's custody/security correctly. As the record shows, and as set out in Plaintiff's Second Supplemental Declaration, the rescoring of Plaintiff's custody/security score was caused by multiple filings, both formal and informal, by Plaintiff seeking correction, and

in an approximately one-hour long meeting with the institution's Case Manager Coordinator, during which the CMC sought and received concurrence from member(s) of the Mid-Atlantic regional staff;

2. Plaintiff did not, as alleged by Defendant in the very next sentence, file an administrative remedy request to the Warden because he was dissatisfied with the re-scoring remedy. As the record plainly shows, Plaintiff sought administrative relief weeks after reaching an informal resolution with the institution's CMC because:

   A. Plaintiff's Case Manager had not done the re-scoring committed to by the CMC as part of the April 18, 2006, informal resolution; and,

   B. Following the June, 2006 re-scoring, because such re-scoring did not amend Plaintiff's BOP file as required by the Privacy Act.

   As admitted by Defendant in previous filings, such re-scoring does not permanently correct the file;

3. Despite Defendant's statements to the contrary, which are contained in the same paragraph as referenced in Item 2, above, and in footnote one thereto, the Warden did not deny Plaintiff's May 20, 2006 Administrative Request. In the

2

Warden's June 9, 2006, response, he quotes from the Probation Officer's letter of February 27, 2006, and then states that FCI-Beckley "will not hold" Plaintiff accountable for the incorrect information in his BOP file. Such confirms the Warden's concurrence with the informal resolution. The Warden then states that he could "find no basis for further administrative action." **Warden's Response of June 9, 2006**, ln.12. This statement does not constitute a denial, as claimed by Defendant. Rather, it reconfirms the Warden's concurrence with the informal remedy;

4. Plaintiff's appeal to the Regional Office was a further attempt to have his BOP file permanently changed;

5. Defendant next tells the Court the Regional Office denied the appeal stating the BOP "did not have the authority to **depart** from the PSI." (emphasis added). This is incorrect. What the Regional Office wrote was that it did not have "the authority to **modify** your PSI." **Regional Administrative Appeal** of July 18, 2006, ln.5. (emphasis added). Plaintiff asked on appeal to the Region that his BOP file be corrected, not the PSI be modified. Such correction could be made by memo entry to Plaintiff's Central File, acknowledging the existing conflict between Plaintiff's PSI and Plea Agreement, and instructing future file users not to consider the conflicting PSI information; hence, Plaintiff's further appeal

3

to the BOP Central Office;

6. Following misstating the Region's words in the July, 2006, response, Defendant audaciously tells the Court Plaintiff attempted to create a mis-impression to the Court. See **Response**, pg.2, n.2 and 3. Clearly, the Region's words, "[w]e find no reason to depart from the decision made by the institution," **Regional Appeal Response**, *id*., ln.13-14;

   A. referenced the FCI-Beckley **institutional** response appealed by Plaintiff, not the Probation Office claimed by Defendant; and,

   B. equates to the Region's agreement to the remedy implemented at the **institutional** level, that being remedy by recalculation of custody/security level, not permanent file correction.

   Further, notwithstanding Defendant's claims in footnotes two and three, these requests for administrative remedy, as well as the instant action, were taken to cause the BOP, not the Probation Department to change their records;

7. As to footnote three, and Defendant's statements regarding the Central Office's appeal response;

   A. by concurring with the "response(s) provided," the Central Office concurred with the institution-level remedy to

4

       Plaintiff's request for administrative remedy, that being the recalculation of Plaintiff's custody/security without considering the conflicting information at question in the instant action;

  B. Plaintiff did not take thing out of context as alleged; and,

  C. that Defendant's statements regarding Plaintiff were spuriously given.

8. As shown by the record, on April 18, 2006, Case Management Coordinator—Plaintiff's Case Manager's superior—sought out and received concurrence from the Regional Office of the institution's decision to ignore the information in the PSI that conflicts with the United States admissions in Plaintiff's Plea Agreement. Further, as shown above, both the Regional and Central Offices had concurred with the decision through their respective administrative appeal responses (despite Defendant's claims to the contrary). Plaintiff contends it is possible, even probable, that such action and the eventual recalculation of Plaintiff's custody/security score on June 21, 2007, were done in retaliation for Plaintiff's bringing the instant action;

9. Defendant's contention that Plaintiff's claim for estoppel lacks merit is farcical. In the very next sentence, Defendant argues that **promissory estoppel** applies less broadly against

the Defendant than "private actors". <u>Response</u>, pg.2, ln. 13-14. Plaintiff responds as follows;

A. Plaintiff argued in his Third Supplemental Pleading that **estoppel in pais applies here**, not promissory estoppel;

B. While it is true that equitable estoppel (estoppel in pais) is restricted in matters involving the federal government, it is also true that many courts have accepted estoppel requests against the government under a variety of rationales and analyses. See **Office of Personnel Management v. Richmond**, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); <u>Trout v. Garrett</u>, 780 F.Supp. 1396 (D.D.C. 1991); and, <u>United States v. Cox</u>, 964 F.2d 1431 (4th Cir. 1992);

C. the Supreme Court has noted that while public interest allows the government to be free from estoppel **in enforcing laws**;

(1) the enforcement of laws is not at question here;

(2) the Court also stated that under some circumstances, as in this case, such estoppel bar might be outweighed by countervailing interest of citizens in some minimum standard of decency, honor and reliability in dealings with government, permitting estoppel to run against the government. **New York Institute v. Riley**, 996 F.Supp. 1300, 119 L.Ed Law Rep. 428 (S.D.N.Y. 1997);

(3) the vast majority of court rulings against the application of estoppel against the federal government revolve around issues of;

  i. separation of powers;

 ii. enforcement of laws;

iii. challenges by non-federal governmental units; and,

 iv. monetary claims.

none of these four issues are at challenge here;

(4) equitable estoppel is distinct from promissory estoppel, where the latter involves a clear and definite promise, while the former involves only representations and inducements. Plaintiff agreed to informally resolve his formal request for administrative relief based upon the representations and inducements offered by the institution's Case Management Coordinator, namely, the recalculation of his custody/security score without use of the disputed information;

(5) Defendant cites <u>Weisberg v. U.S. Dept. of Justice</u>, 745 F.2d 1476, 1494 (D.C. Cir. 1994)(<u>citing</u> Restatement (Second) of Contracts §90 (1981) in arguing that even if equitable estoppel is available here, that such does not apply to this action. <u>Response</u>, pg.3, ln.11-15.

    Quoting from the opinion, Defendant argues that when a promise (to recalcualte Plaintiff's custody/security score) which the promisor (FCI-Beckley) should reasonably expect to induce action or forebearance on the part of the promisee (Plaintiff), or a third person (Plaintiff's family) and which does induce such action or forbearance (the informal resolution), such promise is binding if the injustice (keeping Plaintiff incarcerated two security levels higher than BOP policy allows) can be avoided (as in this case) only by enforcement of the promise. Such makes Plaintiff's case for estoppel;

(6) Defendant then cites **Heckler v. Community Health Services**, 467 U.S. 51, 59 (1984), **Response**, pg.3, ln.15-17. Again, Defendant sustains Plaintiff's argument for estoppel, for the party requesting estoppel (Plaintiff) has relied on the adversary's (BOP's) conduct (the promise) that when changed (promise broken) Plaintiff's position worsened (no longer eligible for transfer to a minumum security institution);

(7) at the beginning of page four of the Response, Defendant tells the Court;

  i. the promise by Plaintiff's Case Manager is an allegation;

  ii. that Exhibit G to the Complaint states that the infor-

mal resolution was not accomplished;

iii. that Plaintiff's own actions demonstrate that he did not rely upon the actions of the Case Manager.

Defendant's statements to the Court, which are ludicrous in nature and prejudicial in effect are responded to as follows;

i. on the first page of the Response, Defendant terms the Case Manager's action as a decision, only to now recast the decision as an allegation;

ii. Exhibit G, of the Complaint, Petitioner's new request for informal resolution, was not filed because—in Defendant's words—"informal resolution was not accomplished," but due to the fact that weeks following reaching an agreement with the institution's CMC, Plaintiff's Case Manager still had not done the agreed upon custody/security recalculation. Since the CMC is the Case Manager's superior, Plaintiff was left with no other option but to seek another informal resolution;

iii. the May 17, 2006 informal resolution request, subsequent administrative remedy request and appeals, were filed because the Case Manager refused to do the recalculation agreed to in the informal resolution, and later

9

because the BOP refused to correct Plaintiff's Central File;

iv. Plaintiff did rely on the Case Management Coordinator's promise to recalculate his custody/security score. Post-informal resolution, Plaintiff's remedy requests were filed to cause the promised recalculation to happen, and later to cause permanent changes to be made to his BOP-file, the purpose of the instant action.

(8) Beginning on line four of page four of the Response, Defendant argues, at length, that "before promissory estoppel [actually equitable estoppel] may be applied against the government, Plaintiff must demonstrate that the employee who allegedly made the promise had 'actual authority' to bind the government," to which Plaintiff replies;

i. first we dispense with the Defendant's penchant late in the response to refer to the institution's promise as an alleged promise. The promise, a part of the April 18, 2006 resolution, **was made, and kept for approximately one year.** The promise was a real promise, not an allegation;

ii. Plaintiff rightfully believed the CMC possessed the authority to bind the government because P.S. 5100.08,

which Defendant attached as Exhibit 8 to the Response, states in Chapter 6, Page 1 (page four of Exhibit 8) that, "[i]t is clearly understood that [in] the Custody Classification [process]" final review authority is held by the "Unit Team", which includes the Case Manager, "and/or the Warden." Since Title 28 of the Code of Federal Regulations, §500.01(a) allows for the Warden, the institution's Chief Executive Officer, to delegate his mandated authority to members of his staff, Plaintiff reasonably believed CMC Hamrick to possess the authority to bind the promise made. The fact the informally resolved Administrative Remedy request to the Warden was delegated to CMC Hamrick confirms the reasonability of Plaintiff's belief.

iii. Defendant claims that the Case Manager, (or Case Management Coordinator) cannot bind the BOP in custody matters because review is mandated by more specialized Regional staff are contradicted by Defendant's own Exhibit. Program Statement 5100.08 says differently, stating that local officials not only make "initial determination[s]" they are "final review authority" according to BOP policy.

Clearly, the Warden, who possesses authority to bind the BOP, delegated the authority to resolve Plaintiff's Administrative remedy Request to CMC Hamrick. Such gave

11

institutional authority to bind the FCI and the BOP.

As demonstrated herein, Defendant's Response to Plaintiff's Third Supplemental Pleading is a spurious effort. Plaintiff renews his respectful request to the Court to deny Defendant's Motion to Dismiss and to find for Plaintiff regarding the Complaint. In the alternative, Plaintiff asks that after denying Defendant's summary dismissal request, the Court estop Defendant's recent actions in regard to his custody/security calculation, and to order an evidentiary hearing be held following production of discovery.

Respectfully submitted on this the 25th day of July, 2007.

*[signature]*
ERIC K. CONKLIN, Pro Se
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIC K. CONKLIN, )
    Plaintiff, )
)
)
v. ) Case No.:07-155(RBW)
)
)
)
U.S. BUREAU OF PRISONS, )
    Defendant. )

### THIRD SUPPLEMENTAL DECLARATION

    In accordance with the provisions set out in 28 U.S.C. § 1746, I, the undersigned, do hereby make the following declarations:

1. Plaintiff declared in his Second Supplemental Declaration, pg. 3, ¶ 15, that Case Manager Lennon completed the initial rescoring on July 20, 2006; this statement is incorrect. See Exhibit "1" attached hereto. July 20, 2006 is the date a Management Variable was placed on Plaintiff by the regional office; the initial rescoring was in fact completed by Lennon on June 8, 2006.

2. Plaintiff's custody/security was again rescored as "Greatest Severity" on June 21, 2007. See Exhibit "2" attached.

    I declare, under penalty of perjury that the foregoing statements are true to the best of my knowledge.

_7-25-07_
DATE

_[signature]_
ERIC K. CONKLIN

```
                              (A) IDENTIFYING DATA
REG NO..: 19393-058          FORM DATE: 06-08-2006              ORG: BEC
NAME....: CONKLIN, ERIC KAVE                                    CR HX PT: 5
                                     MGTV: NONE
PUB SFTY: NONE                       MVED:
                              (B) BASE SCORING
DETAINER: (0) NONE                   SEVERITY.......: (3) MODERATE
MOS REL.: 29                         PRIOR..........: (3) SERIOUS
ESCAPES.: (0) NONE                   VIOLENCE.......: (3) 5-10 YRS MINOR
PRECOMMT: (0) N/A
                              (C) CUSTODY SCORING
TIME SERVED.....: (4) 26-75%         DRUG/ALC ABUSE.: (2) PAST 5 YRS
MENTAL STABILITY: (4) FAVORABLE      TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE           RESPONSIBILITY.: (2) AVERAGE
FAMILY/COMMUN...: (4) GOOD

                      --- LEVEL AND CUSTODY SUMMARY ---
BASE  CUST  VARIANCE   SEC TOTAL   SCORED LEV  MGMT SEC LEVEL   CUSTODY   CONSIDER
 +9   +24     -1          +8         LOW            N/A            IN     DECREASE

G5149       INMATE/DESIG FACL LEVEL MISMATCHED, HAVE REGION ADD A MGTV
G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

**EXHIBIT "1"**

```
                              (A) IDENTIFYING DATA
REG NO..: 19393-058           FORM DATE: 06-21-2007        ORG: BEC
NAME...: CONKLIN, ERIC KAVE
                                       MGTV: NONE
PUB SFTY: GRT SVRTY                    MVED
                              (B) BASE SCORING
DETAINER: (0) NONE                SEVERITY.......: (7) GREATEST
MOS REL.: 17                      CRIM HIST SCORE  (04) 5 POINTS
ESCAPES.: (0) NONE                VIOLENCE.......: (3) 5-10 YRS MINOR
VOL SURR: (0) N/A                 AGE CATEGORY...: (2) 36 THROUGH 54
EDUC LEV: (0) VERFD HS DEGREE/GED DRUG/ALC ABUSE.: (1) <5 YEARS
                              (C) CUSTODY SCORING
TIME SERVED....: (4) 26-75%       PROG PARTICIPAT: (1) AVERAGE
LIVING SKILLS..: (2) GOOD         TYPE DISCP RPT : (5) NONE
FREQ DISCP RPT.: (3) NONE         FAMILY/COMMUN .: (4) GOOD

                   --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT  SEC LEVEL  CUSTODY  CONSIDER
 +17 +19    -1        +16      MEDIUM   N/A                  IN     DECREASE


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

EXHIBIT "2"

## CERTIFICATE OF SERVICE

    I **HEREBY CERTIFY** that a true and correct copy of the foregoing Reply to Defendant's Response to Plaintiff's Third Supplemental Pleading has been served via first class U.S. Mail upon the following:

    AUSA Darrell C. Valdez
    U.S. Attorney's Office
    555 Fourth Street, N.W.
    Washington, DC 20001

on this the 25th day of July, 2007.

_____
ERIC K. CONKLIN, Pro Se