UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC K. CONKLIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 07-0155 (RBW) |
| UNITED STATES BUREAU OF PRISONS, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendant's motion to dismiss. For the reasons discussed below, the Court will grant the motion.

I. BACKGROUND

Plaintiff is a federal prisoner who currently is incarcerated at the Beckley Federal Correctional Institution in Beaver, West Virginia ("FCI Beckley"). Complaint ("Compl.") at 2. He brings this civil action against the Federal Bureau of Prisons ("BOP") under the Privacy Act, 5 U.S.C. § 552a (2000). *Id.*

The BOP maintains in its files concerning the plaintiff a copy of his presentence investigation report ("PSI") prepared by the United States Probation Office for the Western District of Virginia ("USPO").[1] Compl. at 3, 5. Plaintiff alleges that the PSI "contains two unsubstantiated statements claiming Plaintiff threatened one Josh Smeltzer with a firearm." *Id.* at 5. He challenges the accuracy of these statements because they conflict with the terms of his

---

[1] Plaintiff's PSI is not included in this record. *See* Compl. at 1.

1

plea agreement and the government's stipulation that plaintiff did not brandish a firearm for purposes of sentencing under 18 U.S.C. § 924(c) (2000).[2]  *Id.* at 5-6 & Exhibit ("Ex.") A (Plea Agreement, Case No. 1:03CR96).  He further claims that these statements (items #8-9 of the PSI) are incorrect and unreliable because "[t]hey were made by admitted opiate addicts who were, at the time of their statements, under indictment/arrest for crimes in which they were seeking to get a break or a deal from law enforcement officers."  *Id.* at 6.   According to plaintiff, prior to his arrival at the BOP, staff "utilized information contained in [his] PSI to calculate Plaintiff's custody level, to determine the location of incarceration, the type of inmates with whom he would be housed, and, surely, many other decisions unknown to Plaintiff."  Compl. at 5.  Plaintiff states that the BOP has been relying on the incorrect statements since 2004.  *Id.* at 7.  And, plaintiff contends that the BOP's reliance on this incorrect information resulted in his classification as a "high custody" inmate, placement in a higher security facility than is warranted, designation to correctional facilities far from his home, and denial of visitation from his family.  *Id.* at 11.

In an effort to have the PSI corrected, plaintiff sent a written request to the USPO, Compl. at 7 & Ex. B (January 16, 2006 letter to USPO), noting the inconsistencies in the report. Plaintiff requested that the USPO amend the PSI and send a revised copy to FCI Beckley.  *Id.*, Ex. B.  The USPO responded as follows:

> The information in paragraphs 8 and 9, for which you referenced, was taken from the case agent's reports.  During the objection stage of the presentence report, neither you nor your attorney objected to that information at that time and, on the date of your sentencing, the Honorable James P. Jones, Chief United States District Judge, found

---

[2]   The pertinent part of this provision of the United States Code states that "any person who, during and in relation to any crime of violence or drug trafficking crime, . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm shall" be sentenced to a specified term of imprisonment, depending upon the circumstances, in addition to any penalty imposed for the underlying offense.  18 U.S.C. § 924(c)(1)(A) (2000).

> the information in the presentence report as fact. Therefore, no changes will be made.

Compl., Ex. C (February 27, 2006 letter from T.H. O'Neill, United States Probation Officer).[3] Plaintiff argues that the BOP intentionally has failed to recognize the inaccuracy of the PSI, and has failed to correct that information or "in the least, [to] make [a] notation in Plaintiff's Central File as to the inaccuracies and their irrelevancy." Compl. at 10. He demands amendment of the PSI and an award of damages. *Id.* at 13.

## II.  DISCUSSION

Generally, the Privacy Act requires that each covered agency:

> Maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

5 U.S.C. § 552a(e)(5). An individual may access an agency's records pertaining to him, and may request amendment of those records. 5 U.S.C. § 552a(d)(1), (2). He then may file a civil action against the agency if it refuses to amend its records upon request, 5 U.S.C. § 552a(g)(1)(A), or if the agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C); *see Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992) (subsection (g) provides civil remedies for violations of subsection (e)(5)). A plaintiff must

---

[3]    Following his unsuccessful attempt to obtain relief from the USPO, plaintiff raised, unsuccessfully, his challenge to the PSI through the BOP's inmate grievance procedure. Compl. at 7-8 & Ex. H (Responses of Warden, Regional Director, and National Appeals Administrator).

bring his claim under the Privacy Act "within two years from the date on which the cause of action arises." 5 U.S.C. § 552a(g)(5). In a civil suit filed pursuant to (g)(1)(C), if the agency's actions were willful or intentional, the court may award actual damages sustained by the individual as a result of the agency's recordkeeping failures. 5 U.S.C. § 552a(g)(1)(A).

### A. The Timeliness of the Complaint

Defendant argues that plaintiff's Privacy Act claim is time barred. Memorandum of Points and Authorities in Support of the Defendant's Motion to Dismiss ("Def.'s Mot.") at 4-7. A Privacy Act cause of action arises "at the time that (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed by the error; and (3) the plaintiff either knew or had reason to know of the error." *Szymanski v. United States Parole Comm'n*, 870 F. Supp. 377, 378 (D.D.C. 1994); *see Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). A new cause of action does not arise each time an adverse determination is made based on the allegedly erroneous records. *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir.), *cert. denied*, 537 U.S. 1057 (2002); *Bergman v. United States*, 751 F.2d 314, 317 (10th Cir.), *cert. denied*, 474 U.S. 945 (1985). Unless the statute of limitations is equitably tolled, the late filing of a Privacy Act claim deprives the court of subject matter jurisdiction. *See Chung v. United States Dep't of Justice*, 333 F.3d 273, 276-78 (D.C. Cir. 2003); *Bernard v. United States Dep't of Defense*, 362 F. Supp. 2d 272, 278 (D.D.C. 2005).

Defendant argues that plaintiff knew or should have known of the PSI's inaccuracies at the time of his sentencing in May 2004. Def.'s Mot. at 6 & Ex. 1 ("Lennon Decl."), Attach. 2 (May 14, 2004 Judgment and Commitment Order) at 7 (adopting presentence investigation report with one addition by Judge Jones). Further, defendant asserts that plaintiff knew or should have known that the inaccurate information in the PSI would be used in determining his

the BOP custody classification score in June 2004 by BOP staff at the United States Penitentiary in Leavenworth, Kansas. Def.'s Mot. at 6. Thus, argues the defendant, the filing of his Privacy Act suit on December 29, 2006, more than two years after these events, is untimely.[4] *Id.*

Plaintiff counters the BOP's argument on three grounds. First, he claims that his cause of action did not arise until September 2005, upon his arrival at FCI Beckley. Memorandum in Support of Plaintiff's Response to the Defendant's Motion to Dismiss ("Pl.'s Opp'n") at 3. He explains that when he arrived at Leavenworth in 2004, he "began questioning his being classified to a high security level institution." *Id.* He further states that after his security level was adjusted and after he was transferred to FCI Beckley, he "discovered that his Central File had not been changed at Leavenworth and contained inaccuracies." *Id.* He declares that he "raised the issue of the incorrect information contained in [his] PSI . . . in early December, 2005." *Id.*, Conklin Declaration ¶ 12.

Second, plaintiff argues that the statute of limitations was tolled while his inmate grievances were pending. Pl.'s Opp'n at 4. He states that the administrative remedy process concluded on October 2, 2006, making the filing of his complaint in December 2006 timely. *Id.* at 5.

Lastly, plaintiff argues that "he did not know and had no reason to know in either May or June, 2004 that the incorrect information in his PSI would be used by the BOP for classification purposes." *Id.* at 6. He explains that he was not aware that a PSI was anything other than a tool for the sentencing judge, and, because he had not been a federal prisoner before, he "had no way of knowing that the BOP utilized the PSI for custody purposes." *Id.*

---

[4] The Clerk of Court received plaintiff's *pro se* complaint and application to proceed *in forma pauperis* on December 29, 2006. These papers were not officially entered onto the court's electronic docket until January 22, 2007.

Because statute of limitations issues often depend on contested questions of fact, the Court must exercise caution before dismissing a complaint on statute of limitations grounds based solely on the face of the complaint. *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981) (commenting on the "inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense"). Thus, the Court may grant a motion to dismiss as untimely "only if the complaint on its face is conclusively time-barred," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), or "if 'no reasonable person could disagree on the date' on which the cause of action accrued." *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)). On the record here, the date on which plaintiff knew or had reason to know of the alleged Privacy Act violations is unclear, and, therefore, the Court cannot conclude that plaintiff filed his civil action after the two-year statute of limitations had expired. Accordingly, the Court will deny defendant's motion to dismiss the complaint as untimely.

### B. Relief Available Under the Privacy Act

Defendant moves to dismiss the complaint on the ground that the BOP's failure to amend the plaintiff's PSI fails to provide a basis for maintaining Privacy Act claims or for awarding monetary damages. Def.'s Mot. at 7-14. Notwithstanding the relief available under the Privacy Act, the Director (or "head") of an agency may promulgate regulations to exempt any of the agency's systems of records from certain parts of the Privacy Act, if a system of records is:

> Maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

6

5 U.S.C. § 552a(j)(2). Pursuant to this authority, the BOP's Director promulgated regulations to exempt the BOP's Inmate Central Records System (JUSTICE/BOP-005) from subsections (d) and (g) of the Privacy Act, that is, its amendment and remedies provisions.[5] *See id.*; 28 C.F.R. § 16.97(a)(4), (b)(3). A copy of an inmate's PSI is maintained in the Inmate Central Records System. Lennon Decl. ¶ 18. Thus, because these regulations exempt the Inmate Central Records System from subsection (d) of the Privacy Act, amendment of the PSI is not an available remedy. *White v. United States Probation Office*, 148 F.3d 1124, 1125 (D.C. Cir. 1998) (per curiam) (barring claim for amendment of PSI because regulations exempt PSIs from amendment provisions of the Privacy Act); *Sellers*, 959 F.2d at 309 (upholding dismissal of claim under section 552a(d) for amendment of PSI maintained in BOP inmate files).

Similarly, because regulations exempt the Inmate Central Records System from subsection (e)(5) of the Privacy Act, 5 U.S.C. § 552a(j)(2); 28 C.F.R. § 16.97(j), (k)(2), plaintiff effectively is barred from obtaining any remedy, including damages, under subsection (g), for the BOP's alleged failure to maintain records pertaining to him with the mandated level of accuracy.[6] *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (upholding dismissal of Privacy Act claims against BOP because Inmate Central Records System is exempt from subsection (e)(5) of the Privacy Act); *Scaff-Martinez v. Fed. Bureau of*

---

[5] The Court rejects plaintiff's arguments that the BOP is not authorized to exempt certain systems of records from the Privacy Act and that records in the Inmate Central Records System play no role in the enforcement of criminal laws. *See* Pl.'s Opp'n at 8-9. The language of the Privacy Act itself clearly contemplates its application to records compiled at any stage of the criminal enforcement process, including prison records. *See* 5 U.S.C. § 552a(j)(2). Contrary to plaintiff's assertions, for purposes of the Privacy Act, the enforcement of criminal laws does not end at the point of conviction, and thus records associated with an individual generated after conviction fall within the scope of the Privacy Act. *See id.*

[6] Plaintiff emphasizes that he filed his complaint "for the purpose of causing the BOP to correct its records regarding him." Pl.'s Opp'n at 10. Thus, he appears to abandon his claim for damages. *Id.* at 9-10. Furthermore, because plaintiff does not oppose defendant's argument that he is not entitled to damages, the Court deems the argument conceded. *See, e.g., Murray v. District of Columbia*, 52 F.3d 353, 355-56 (D.C. Cir. 1995); LCvR 7(b).

*Prisons*, No. 05-11119, 2005 WL 3556035, at *1 (11th Cir. Dec. 29, 2005) (per curiam) (affirming dismissal of Privacy Act claims, including claim for monetary damages, because inmate records are exempt from subsections (d), (e)(5), and (g)); *Fisher v. Bureau of Prisons,* No. 05-0851, 2006 WL 401819, at *2 (D.D.C. Feb. 21, 2006) (dismissing Privacy Act claims based on failure to amend PSI and for damages based on violation of accuracy provision because BOP's Inmate Central Records System is exempt from subsection (e)(5)); *see Parks v. Bureau of Prisons*, No. 7:06-CV-00131, 2006 WL 771718, at *1 (W.D. Va. Mar. 23, 2006) (dismissing suit under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted because BOP central inmate records are exempt from Privacy Act's accuracy provision).

      To the extent that plaintiff is seeking to have his custody classification form amended, this request also must be denied.  The custody classification form, too, is maintained in the Inmate Central Records System, Lennon Decl. ¶ 18, and therefore is exempt from the Privacy Act's amendment provision.  Moreover, "[i]t is well-established that, generally speaking, the Privacy Act allows for correction of facts but not corrections of opinions or judgments." *Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (quoting *McCready v. Nicholson*, 465 F.3d 1, 19 (D.C. Cir. 2006) (internal quotation marks omitted).  Through the custody classification procedure, the BOP assigns an inmate "a level of supervision according to [his] criminal history and institutional behavior/adjustment.  An inmate's custody level is an indication of how much staff supervision an inmate requires within and beyond the confines of the institution."  Program Statement 5100.08, <u>Inmate Security Designation and Custody Classification</u> (9/12/2006), Ch. 6, p. 1.  "The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines." *Id.*  Plaintiff's custody

classification reflects the judgment of the BOP staff, and, therefore, is not subject to amendment under the Privacy Act.

### III.  CONCLUSION

For the reasons set forth above, the Court concludes that the complaint fails to state Privacy Act claims upon which relief can be granted.  Accordingly, defendant's motion to dismiss will be granted.  An Order consistent with this Memorandum Opinion will be issued separately.

                                                  */s/*
                          REGGIE B. WALTON
                          United States District Judge

Date:  September 24, 2007