IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ERIC KAVE CONKLIN, Pro Se     )
    Plaintiff,              )
                            )
                            )
v.                            )   Case No.:07-155(RBW)
                            )
                            )
                            )
UNITED STATES BUREAU OF PRISONS,)
    Defendant.              )

---

**MOTION FOR ENLARGEMENT OF TIME
IN WHICH TO FILE PLAINTIFF'S MOTION
REQUESTING RECONSIDERATION
PURSUANT TO F.R.CR.P. RULE 59(e)**

---

COMES NOW Plaintiff, pro se requesting the Court enlarge the time in which he may file this Request for Reconsideration to twenty days rather than the ten days required by the F.R.Cr.P. Rule 59(e). Plaintiff requests this enlargement of time for the following reasons:

1. Plaintiff is held by Defendant at FCI-Beckley, West Virginia, a medium security institution with extremely limited controlled movements. Due to such controlled movements, Plaintiff's work schedulein the institution's HVAC Department and the institution's food service and law library schedule, Plaintiff's access to the law library is limited to less than eleven hours per week. Access to the law library was neces-

sary in order to have access to the Privacy Act, the Code of Federal Regulations and typewriters and paper in which to prepare the request;

2. Plaintiff received the Court's Order dismissing his Petition on Friday, September 28, 2007. By rule, Plaintiff's Request for Reconsideration was due on October 8, 2007. In addition to having limited access to the institution's law library, as set forth hereinabove;

   (a) on Tuesday, October 16, 2007, the law library was closed for the day so that the Education Department personnel could attend a conference;

   (b) the entire institution was locked in their respective housing units for the majority of both Wednesday and Thursday, October 17th and 18th; and,

   (c) the institution's inmate commissary was out of typewriter ribbons for the weeks of September 10, 2007, September 17, 2007, September 24, 2007 and October 1, 2007.

3. The liberal pleadings and construance doctrine, as detailed on page 3 of Plaintiff's initial filing in the instant case, holds that pro se pleaders cannot be held to the standards set for attorneys. F.R.Cr.P. Rule 59(e) is such a standard.

   For the above reasons, Plaintiff prays the Court will allow

the filing of the enclosed Request for Reconsideration at this time.

Respectfully submitted on this the 16 day of October, 2007.

*[signature]*
ERIC KAVE CONKLIN, Pro Se
Reg. # 19393-058
FCI-Beckley
P.O. Box 350
Beaver, WV 25813

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ERIC KAVE CONKLIN, Pro Se         )
    Plaintiff,                    )
                                  )
                                  )
                                  )
v.                                )   Case No.: 07-155(RBW)
                                  )
                                  )
                                  )
UNITED STATES BUREAU OF PRISONS,  )
    Defendant.                    )

---

**REQUEST FOR RECONSIDERATION**

---

    COMES NOW, Plaintiff, pro se and a federal prisoner in request that the Court reconsider its September 24, 2007 Order granting Defendant's motion to dismiss. In support of this request, Plaintiff states the following:

1. The parties to this action acknowledge that a significant discrepancy exists between Plaintiff's plea agreement and PSI, and that such discrepancy involves whether or not Plaintiff brandished, or even possessed a firearm during the instant offense;

2. The Defendant has unilaterally chosen, despite Plaintiff's objection and his requests for adiministrative relief, to grant more validity to uncorroborated statements of non-law enforcement individuals contained in his PSI, rather than the stipulations asserted by the United States within

<u>Plaintiff's plea agreement, which expressly contradict the</u> uncorroborated statements in the PSI;

3. The record before this Court clearly establishes that Defendant's unilateral decision to utilize the PSI information, while choosing to ignore the stipulations made by the United States in Plaintiff's plea agreement has adversely affected the manner in which the Defendant has carried out Plaintiff's sentence. As the record shows, utilization of the incorrect information contained in the PSI has resulted in Plaintiff being assigned to institutions operated by Defendant that function up to two security levels above the type of institution Plaintiff would be confined in had Defendant abided by the contractual stipulations made by the United States in the plea agreement;

4. As documented in the Court's **Memorandum Opinion** of September 24, 2007, 5 U.S.C.S. § 552a allows the Defendant to "promulgate regulations to exempt any of the agency's records from certain parts of the Privacy Act" under certain situations, <u>id.</u>, at 6, and that the BOP's Inmate Central Record System (Justice/BOP-005) from [] the Privacy Act []." <u>Id.</u>, at 7.

Section 552a(j) of the Act requires that in order to properly exempt a system of records from the Privacy Act, an agency must not only promulgate rules exempting certain records, the agency must also state the reasons in the rule itself. See <u>**Ryan v. Dept. of Justice**</u>, 595 F.2d 954 (4th Cir. 1979).

2

<u>In compliance with the requirement to explain the reasons</u> for exempting its Inmate Central Record System, Defendant states:

(a.) "From subsection (d) because exemption from this section is essential to protect internal processes by which Bureau personnel are able to formulate decisions and policies with regard to federal prisoners, to prevent disclosure of information to federal inmates that would jeopardize legitimate correctional interests of security, custody, or rehabilitation, and to permit receipt of relevant information from other federal agencies, state and local law enforcement agencies, and federal and state probation and judicial offices." 28 C.F.R., Ch. 1, § 16.97(b)(3)(7/1/2006 edition); and,

(b.) "From subsection (e)(5) because in the collection and maintenance of information for law enforcement purposes, it is impossible to determine in advance what information is accurate, relevant, timely and complete. Data which may seem unrelated, irrelevant or incomplete when collected may take on added meaning or significance during the course of an investigation or with the passage of time, and could be relevant to future law enforcement decisions. In addition, because many of these records come from the courts and other state and local criminal justice agencies, it is administratively impossible for them and the Bureau to insure compliance with the provision. The restrictions of subsection (e)(5) would restrict and delay trained correctional managers from timely exercising their judgment in managing the inmate population and providing the safety and security of the prisons and public." 28 C.F.R., Ch.1, § 16.97(k)(2)(7/1/2006 edition).

In promulgating and explaining the reasons for exempting subsection (e)(5) of the Privacy Act, the Defendant also established the following rule:

> "(k) These exemptions apply only to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. 552a(j). Where compliance would not appear to interfere with or adversely affect the law enforcement process, and/or where it may be appropriate to permit individuals to contest the acuracy of the information collected, <u>e.g.</u> public source materials, or those supplied by third parties, the applicable exemption may be waived, either partially or totally by the Bureau." 28 C.F.R. § 16.97(k)(7/1/2006 edition).

As detailed in paragraph 4(a), hereinabove, the Defendant has exempted itself from 5 U.S.C. § 552a(d). Section 552a(d) is titled "Access to Records". This exemption at 28 C.F.R. § 16.97(b)(3) applies to eight of Defendant's systems of records, of which (4) is the Inmate Central Record System (Justice/BOP-005). Unlike the exemptions for subsection (e)(5), Defendant promulgated no rules under which to Bureau can waive such exemption. See **28 C.F.R. § 16.97(a)**.

Despite the fact Defendant has no published rule to waive the exemption to subsection (d), "Access to Records", Defendant allows federal inmates review access to the majority of the contents of that inmate's central record. **Program Statement 5800.11**. Given access to his BOP Central File enabled Plaintiff to identify the errors contained therein that are at challenge in this matter, namely the discrepancy between Plaintiff's PSI and his plea agreement.

Clearly, the Defendant has waived its rule exempting access

4

<u>to certain records under the Privacy Act in this (and all</u> other) situation(s).

As to subsection (e)(5), which requires Defendant to "maintain all records which are used by the agency in making nay determinations about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination", Defendant has given us guidance as to when a waiver of its exemption under the subsection is to be granted. Such waiver may be either partially or totally granted under § 16.97(k), <u>id</u>., when:

(c)  Where compliance with the Privacy Act would not appear to interfere with or adversely affect the law enforcement process; and,

(d)  where it may be appropriate to permit individuals to contest the accuracy of the information collected from third parties.

Plaintiff contends he should be granted such a waiver for the following reasons:

(e)  amending Plaintiff's Central record System file would not interfere with or adversely affect the law enforcement process; and,

(f)  Plaintiff contests the accuracy of the incorrect informa-

5

~~tion furnished to Defendant by a third party, the United~~ States Probation Department.

Amending Plaintiff's central file will not interfere with or adversely affect the law enforcement process for the following reasons:

(g) On January 12, 2004, Plaintiff pled guilty to Counts One and Two of the Indictment, to wit, violations of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § 922(g)(1). Said guilty plea was set out in writing in a Plea Agreement, a contract by and between the Plaintiff and the United States of America. The contract was executed that same day by Plaintiff, his attorney and Dennis H. Lee, Special Assistant United States Attorney, for and on behalf of the United States. In addition to stipulating his guilt to the charges by executing and submitting the contract to the court, Plaintiff waived certain constitutional rights, which are detailed in paragraph one of the contract.

In exchange for Plaintiff agreeing to enter the plea agreement, the United States stipulated that Plaintiff did not brandish a firearm at any time during the commission of the crimes set forth in the Indictment and incorporated within the terms and conditions to the plea contract;

(h) By the signature of the Special Assistant United States Attorney, the United States of America became bound by

the plea contract. Except for both the imposition of and carrying out of the sentence, by entering the contract the United States ended the law enforcement process related to the criminal acts which Plaintiff pled guilty; and,

(i) According to the police report (Exhibit A of this motion) of the incident resulting in the instant Indictment, the incident occurred on October 18, 2002. As such, the statute of limitations expires in less than two weeks, eliminating the possibility of any further law enforcement process regarding the instant case.

Since, as shown herein, no further "law enforcement process" is possible in Plaintiff's case, under which he continues to serve the imposed sentence. As such, correcting Plaintiff's Central Record cannot "interfere with or adversely affect the law enforcement process, satisfying one prong of the exemption waiver rule for subsection (e)(5) as promulgated by Defendant. Since, as shown herein, the disputed information was furnished to Defendant by a third party, Plaintiff has met the only other prong of said waiver requirement.

Based on the above, Plaintiff's situation requires that Defendant grant him a waiver from the agency's exemption from § 552a(e)(5) of the Privacy Act. To deny such waiver would constitute an abuse of discretion on the part of Defendant. Since the "abuse of discretion" standard of review

7

is used in administrative settings, courts have jurisdiction to review and correct actions of governmental agencies where serious or gross abuse of that discretion exists. Defendant, on its own accord, promulgated rules for which a waiver of the exemption under § 552a(e)(5) may be granted. Plaintiff's situation meets all of the criteria established by Defendant. To not grant Plaintiff such waiver is clearly arbitrary and capricious and an abuse of discretion.

5. As discussed hereinabove, the United States of America entered into a plea agreement with Plaintiff. Jurisprudence has well established the fact that plea agreements are contracts and are bound by contract law tenets. As parties to the contract, both the Plaintiff and the **United States of America** are bound by the terms acceptance of the plea agreement. Upon acceptance of the plea agreement, the court became a party, also bound by its terms.

The United States Probation Department and the United States Bureau of Prisons, the Defendant, are agencies of the United States of America. As a part of the United States of America, these agencies are legally bound to the plea agreement's contracted terms. Therefore, by holding Plaintiff accountable for brandishing a firearm within the PSI, the United States Probation Department breached the plea contract on the part of the United States. Such breach has been both compounded and aggrevated by the Defendant by its refusal to adhere to the contractual

8

stipulation made by the United States in the plea agreement, to wit, Plaintiff did not brandish a firearm. By utilizing the breaching information contained in the PSI to classify Plaintiff, Defendant has breached the contract.

6. The United States' breach of its contract with Plaintiff has resulted in his being assigned to a United States prison two security levels higher than the security level applicable had Defendant adhered to the conditions set out in plea contract. such two-level increase in Plaintiff's security level has resulted in Plaintiff's assignment to both high security and medium security prisons, rather than the low security and minimum security institutions that would have been assigned had Defendant contractually complied. The actions of Defendant has resulted in Plaintiff being subjected to significantly harsher conditions of imprisonment. Such violates Plaintiff's Eighth Amendment rights in that he has been subjected to cruel and unusual punishment as a result of Defendant's contractual breach.

Generally speaking, a punishment that amounts to torture, or that is grossly excessive in proportion to the offense for which it is imposed, or that is inherently unfair, of that is shocking or disgusting to people of reasonable sensitivity is a 'cruel and unusual punishment'. **Barron's Law Dictionary,** Fifth Edition (2003) at 124.

Plaintiff's punishment by Defendant is clearly excessive.

Had Defendant abided by the contract terms, Plaintiff would have been assigned to a significantly lower security institution and subjected to substantially less onerous terms of confinement. Further, by breaching the plea contract, the United States has imposed upon Plaintiff a punishment that is inherently unfair. As such, it is plainly obvious the United States has violated Plaintiff's Eighth Amendment rights.

## CONCLUSION

Based on the facts and arguments contained herein, this Court should rescind its Order granting defendant's motion to dismiss, reconsidering Plaintiff's arguments in light of the hereinabove.

Plaintiff prays this Court will upon such reconsideration, grant Plaintiff's request for relief as follows:

1. Rule that Defendant must waive its exemption to § 552a(e)(5) of the Privacy Act as set forth in Defendant's waiver rule, 28 C.F.R. § 16.97(k);

2. Order that Defendant enter a memorandum to Plaintiff's Inmate Central Record that; (a) acknowledges the discrepancy between information contained in Plaintiff's PSI and stipulations made by the United States in Plaintiff's plea contract; (b) that Plaintiff's plea agreement constitutes a contract between the United States and Plaintiff and, as such, the

~~stipulation by the United States that Plaintiff did not~~ brandish a firearm during the instant offenses binds Defendant to that stipulation; and, (c) that statements to the contrary contained in Plaintiff's PSI are to be ignored for custody classification purposes.

3. Order that the Defendant cease utilizing the incorrect information as the result of such use violates Plaintiff's Eighth Amendment rights as set forth hereinabove.

Respectfully submitted on this the 16 day of October, 2007.

                                    ERIC KAVE CONKLIN, Pro Se
                                    Reg. # 19393-058
                                    FCI-Beckley
                                    P.O. Box 350
                                    Beaver, WV 25813

# INCIDENT REPORT
## COMMONWEALTH OF VIRGINIA

| Field | Value |
|---|---|
| 1-PAGE | 1 |
| 3-INCIDENT NUMBER | 02007419 |
| 4-DATE(S) OF INCIDENT | 10/18/2002 |
| 5-R | R |
| 7-TIME(S) OF INCIDENT | 20:10 - 20:45 |
| 8-DAY(S) OF INCIDENT | Friday |
| 12-REPORTING AREA | 0300 |

**13-SOLVABILITY FACTORS:**
- [ ] (1) Suspect Named
- ~~(2) Witness to Crime~~
- [ ] (3) Property Traceable
- [ ] (4) Unique M.O.
- [ ] (5) Suspect Identified
- ~~(6) Susp. Vehicle Identified~~
- [ ] (7) Significant Evidence

**14-INCIDENT:**
- [ ] (1) Unfounded
- [ ] (2) Cleared by Arrest
- [ ] (3) Pending
- [■] (4) Inactive

**15-EXCEPTIONAL CLEARANCE STATUS:**
- [ ] (A) Death Of Offender
- [ ] (B) Prosecution Declined
- [ ] (C) Extradition Declined
- [ ] (D) Refused To Cooperate
- [ ] (E) Juvenile, No Custody
- [■] (N) Not Applicable

**18-WEATHER:** (Max. 1)
- [ ] (1) Clear  [ ] (2) Cloudy  [ ] (3) Rain
- [ ] (4) Snow  [ ] (5) Other  [ ] (6) Unk.

| 19-OFFENSE # | 20-UCR CODE | 21-OFFENSE STATUS | 22-OFFENDER USED | 23-Burglary (220) Location 14&19 | 24-FORCED ENTRY? |
|---|---|---|---|---|---|
| 1 | 90Z | (C) Completed | (N) Not Applicable | # PREMISES ENTERED? | |

**25-OFFENSE NAME:** ABUSIVE LANGUAGE
**26-ADDRESS OF OFFENSE:** 1019 EAST SECOND STREET, Richlands, VA 24641

**28-LOCATION CODE:** (20) Residence/Home

**34-WHICH OFFENDERS ARE RELATED TO THIS OFFENSE?:** [■] #1

**35-BIAS MOTIVATED CRIME:** 88 - None (No Bias)

**36-VICTIM #:** 1
**37-NAME:** CONKLIN, ERIC K.
**38-SOC. SEC. NO.:** 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
**39-DATE OF BIRTH:** 04/16/1961
**40-RESIDENT ADDRESS:** 1019 EAST SECOND STREET, APT.# 2, Richlands, VA
**41-ZIP:** 24641
**43-RESIDENT PHONE:** (296) 970-3937
**45-SEX:** (M) Male
**46-ETHNIC:** (N) Nonhispanic
**47-AGE:** Exact Age 41
**48-RACE:** (W) White
**49-RES. STATUS:** (R) Resident
**50-VICTIM TYPE:** (I) Individual

**51-VICTIM INJURY:** (N) None

**52-THIS VICTIM RELATED TO WHICH OFFENSES?:** #1

| 58-REPORT DATE | 59-DAY | 60-TIME (Military) | 61-REPORTING OFFICER | 62-CODE # |
|---|---|---|---|---|
| 10/18/2002 | Fri | 21:07 | Darrell McGlothlin | 128 |

EXHIBIT A

INCIDENT
COMM... E...

| AD | 71-PAGE # | 72-DATE | 73-INCIDENT NUMBER | 74-ORI# ("B") | 75-REPORTING OFFICER | | 76-CODE # | 77-VICTIM NAME |
|---|---|---|---|---|---|---|---|---|
| | 2 | 10/18/2002 | 02007419 | VA0920300 | Darrell McGlothlin | | 128 | CONKLIN, ERIC K. |

## OFFENDER / ARRESTEE

| 78-ARRESTEE # | 79-NAME Last, | First, | Middle, | 80-AKA |
|---|---|---|---|---|
| | SMELTZER, JOSHUA ADAM | | | |

| 81-OFFENDER # | 82-RESIDENT ADDRESS Street | City | State | 83-Zip | 84-DATE OF BIRTH |
|---|---|---|---|---|---|
| 1 | PO BOX 729, DORAN, VA | | | 24612 | 07/22/1980 |

| 85-RESIDENT PHONE | 86-EMPLOYMENT/SCHOOL PHONE | 87-DRIVER'S LICENSE | 88-DR. LI. STATE | 89-SSN |
|---|---|---|---|---|
| | | | VA | 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 |

| 90-ARREST LOCATION | 91-OCCUPATION | 92-PLACE OF EMPLOYMENT | 93-ARREST TYPE: ☐ (O) On View Arrest ☐ (S) Summons/Cited ☐ (T) Taken Into Cust. |
|---|---|---|---|

**94-SEX:** ■ (M) Male ☐ (F) Female ☐ (U) Unk.
**95-ETHNIC:** ☐ (H) Hispanic ☐ (N) Nonhisp. ☐ (U) Unk.
**96-RACE:** ■ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ☐ (U) Unknown

**97-AGE:** EXACT AGE 22  AGE RANGE: ___ to ___  ☐ (99) Over 98 Yrs. Old  ☐ (00) Unknown

**103-MULT. ARREST INDIC.:** ☐ (C) Count Arrestee ☐ (M) Multiple ☐ (N) N/A
**104-DISPOSITION OF JUVENILE:** ☐ (H) Handled within Department. ☐ (R) Referred outside Department

**105-WEAPONS AT ARREST:** (Max. 2) (Place "A" in blank if automatic)
☐ (01) Unarmed ☐ (11) Firearm ☐ (12) Handgun ☐ (13) Rifle ☐ (14) Shotgun ☐ (15) Other Firearm ☐ (16) Illegal Cutting Instr. ☐ (17) Club / Blackjack / Brass Kn.

**98-RES. STATUS:** ☐ (R) Resident ☐ (N) Nonres. ☐ (U) Unknown  **99-UCR ARR. CODE**  **100-OFFENSE NAME**  **101-ARREST DATE**  **102-ARREST TRANSACT. #**

**106-TYPE ARREST ACTIVITY:** (Max. 3)
☐ (B) Buying ☐ (C) Cultivate/Manufacture/Publish ☐ (D) Distributing/Selling ☐ (E) Exploiting Children
☐ (O) Operating/Promoting/Assisting ☐ (P) Possessing/Concealing ☐ (T) Transport/Transmit/Import ☐ (U) Using/Consuming

**107-AR. DRUG TYPE:** (Max. 3)
☐ (A) "Crack" Cocaine ☐ (B) Cocaine ☐ (C) Hashish ☐ (D) Heroin ☐ (E) Marijuana ☐ (F) Morphine ☐ (G) Opium ☐ (H) Other Narcotics ☐ (I) LSD ☐ (J) PCP ☐ (K) Other Hallucinogens ☐ (L) Amphetamines/Methamphetamines ☐ (M) Other Stimulants ☐ (N) Barbituates ☐ (O) Other Depressants ☐ (P) Other Drugs ☐ (U) Unknown Type Drug ☐ (X) Over 3 Drug Types

| HEIGHT | WEIGHT | HANDEDNESS | BUILD | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | GLASSES | SKIN TONE |
|---|---|---|---|---|---|---|---|---|---|
| 6'04" | 235 | | | BRO - Brown | | | BLU - Blue | | |

---

| 78-ARRESTEE # | 79-NAME Last, | First, | Middle, | 80-AKA |
|---|---|---|---|---|

| 81-OFFENDER # | 82-RESIDENT ADDRESS Street | City | State | 83-Zip | 84-DATE OF BIRTH |
|---|---|---|---|---|---|

| 85-RESIDENT PHONE | 86-EMPLOYMENT/SCHOOL PHONE | 87-DRIVER'S LICENSE | 88-DR. LI. STATE | 89-SSN |
|---|---|---|---|---|

| 90-ARREST LOCATION | 91-OCCUPATION | 92-PLACE OF EMPLOYMENT | 93-ARREST TYPE: ☐ (O) On View Arrest ☐ (S) Summons/Cited ☐ (T) Taken Into Cust. |
|---|---|---|---|

**94-SEX:** ☐ (M) Male ☐ (F) Female ☐ (U) Unk.
**95-ETHNIC:** ☐ (H) Hispanic ☐ (N) Nonhisp. ☐ (U) Unk.
**96-RACE:** ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ☐ (U) Unknown

**97-AGE:** EXACT AGE ___  AGE RANGE: ___ to ___  ☐ (99) Over 98 Yrs. Old  ☐ (00) Unknown

**103-MULT. ARREST INDIC.:** ☐ (C) Count Arrestee ☐ (M) Multiple ☐ (N) N/A
**104-DISPOSITION OF JUVENILE:** ☐ (H) Handled within Department. ☐ (R) Referred outside Department

**105-WEAPONS AT ARREST:** (Max. 2) (Place "A" in blank if automatic)
☐ (01) Unarmed ☐ (11) Firearm ☐ (12) Handgun ☐ (13) Rifle ☐ (14) Shotgun ☐ (15) Other Firearm ☐ (16) Illegal Cutting Instr. ☐ (17) Club / Blackjack / Brass Kn.

**98-RES. STATUS:** ☐ (R) Resident ☐ (N) Nonres. ☐ (U) Unknown  **99-UCR ARR. CODE**  **100-OFFENSE NAME**  **101-ARREST DATE**  **102-ARREST TRANSACT. #**

**106-TYPE ARREST ACTIVITY:** (Max. 3)
☐ (B) Buying ☐ (C) Cultivate/Manufacture/Publish ☐ (D) Distributing/Selling ☐ (E) Exploiting Children
☐ (O) Operating/Promoting/Assisting ☐ (P) Possessing/Concealing ☐ (T) Transport/Transmit/Import ☐ (U) Using/Consuming

**107-AR. DRUG TYPE:** (Max. 3)
☐ (A) "Crack" Cocaine ☐ (B) Cocaine ☐ (C) Hashish ☐ (D) Heroin ☐ (E) Marijuana ☐ (F) Morphine ☐ (G) Opium ☐ (H) Other Narcotics ☐ (I) LSD ☐ (J) PCP ☐ (K) Other Hallucinogens ☐ (L) Amphetamines/Methamphetamines ☐ (M) Other Stimulants ☐ (N) Barbituates ☐ (O) Other Depressants ☐ (P) Other Drugs ☐ (U) Unknown Type Drug ☐ (X) Over 3 Drug Types

| HEIGHT | WEIGHT | HANDEDNESS | BUILD | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | GLASSES | SKIN TONE |
|---|---|---|---|---|---|---|---|---|---|

## SUBJECT DESCRIPTORS

(blank)

# REPORT
COMMONWEALTH OF VIRGINIA

| 173-PAGE # | 174-DATE | 1754-INCIDENT # | 176-REPORTING OFFICER | 177-CODE # | 178-VICTIM NAME |
|---|---|---|---|---|---|
| 3 | 10/18/2002 | 02007419 | Darrell McGlothlin | 128 | CONKLIN, ERIC K. |

## VEHICLE / VEHICLE AD

| 179-YEAR | 180-MAKE | 181-MODEL | 182-STYLE | 183-VIN | 184-LICENSE NUMBER | 185-STATE |
|---|---|---|---|---|---|---|
| | | | | | | |

| 186-OWNER'S NAME | 187-ADDRESS |
|---|---|
| | |

| 188-TOP/SOLID COLOR | 189-SECOND COLOR | 190-DISPOSITION OF RECOVERY: ☐ (I) Impounded ☐ (R) Rel. To Owner | 192-SUSP. VEHICLE? ☐ Y ☐ N | 193-TELETYPE NUMBER |
|---|---|---|---|---|
| | | | | |

| 179-YEAR | 180-MAKE | 181-MODEL | 182-STYLE | 183-VIN | 184-LICENSE NUMBER | 185-STATE |
|---|---|---|---|---|---|---|
| | | | | | | |

| 186-OWNER'S NAME | 187-ADDRESS |
|---|---|
| | |

| 188-TOP/SOLID COLOR | 189-SECOND COLOR | 190-DISPOSITION OF RECOVERY: ☐ (I) Impounded ☐ (R) Rel. To Owner | 192-SUSP. VEHICLE? ☐ Y ☐ N | 193-TELETYPE NUMBER |
|---|---|---|---|---|
| | | | | |

## PROPERTY

| 209-OF. CODE | 210-P. LOSS | 211-P. DES. | 212-QTY. | 213-DESCRIPTION (Include serial number, size, color, etc.) | 214-OWNER | 215-ITEM VALUE | 216-RECOV. DATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 217-TOTAL NUMBER VEHICLES STOLEN: | 218-TOTAL NUMBER VEHICLES RECOVERED: | 219-TOTAL VALUE STOLEN: | 220-TOTAL VALUE RECOVERED: |
|---|---|---|---|
| | | | |

## PROPERTY CODES

**210-PROPERTY LOSS:** (1) None  (2) Burned  (3) Counterfeited/Forged  (4) Damaged/Destroyed/Vandalized  (5) Recovered  (6) Seized  (7) Stolen, etc.  (8) Unk.

**211-PROPERTY DESCRIPTION:**
- (01) Aircraft
- (02) Alcohol
- (03) Automobiles
- (04) Bicycles
- (05) Buses
- (06) Cloths/Furs
- (07) Computer Hardware/Software
- (08) Consumable Goods
- (09) Credit Cards/Debit Cards
- (10) Drugs/Narcotics
- (11) Drug/Narc. Equipment
- (12) Farm Equipment
- (13) Firearms
- (14) Gambling Equipment
- (15) Heavy Equipment-Construction/Industry
- (16) Household Goods
- (17) Jewelry/Precious Metals
- (18) Livestock
- (19) Merchandise
- (20) Money
- (21) Negotiable Instruments
- (22) Nonnegotiable Instruments
- (23) Office-Type Equipment
- (24) Other Motor Vehicles
- (25) Purses/Handbags/Wallets
- (26) Radios/TVs/VCRs
- (27) Recordings-Audio/Visual
- (28) Recreational Vehicles
- (29) Structures-Single Occupancy
- (30) Structures-Other Dwellings
- (31) Structures-Commercial/Business
- (32) Structures-Industrial/Manufacture
- (33) Structures-Public/Community
- (34) Structures-Storage
- (35) Structures-Other
- (36) Tools-Power/Hand
- (37) Trucks
- (38) Vehicle Parts/Accessories
- (39) Watercraft
- (77) Other
- (88) Pending Inventory (of Property)
- (99) Special Category

## DRUG INFO.

| 222-DRUG TYPE | 223-WHOLE DRUG QUANTITY | 224-FRACTIONAL DRUG QUANTITY | 225-DRUG MEASUREMENT | 225-TYPE DRUG MEASUREMENT: |
|---|---|---|---|---|
| | | | | **WEIGHT** (GM) Gram / (KG) Kilogram / (OZ) Ounce / (LB) Pound |
| | | | | **CAPACITY** (ML) Milliliter / (LT) Liter / (FO) Fluid Ounce / (GL) Gallon |

**222-DRUG TYPE:**
- (A) "Crack" Cocaine
- (B) Cocaine
- (C) Hashish
- (D) Heroin
- (E) Marijuana
- (F) Morphine
- (G) Opium
- (H) Other Narcotics
- (I) LSD
- (J) PSP
- (K) Other Hallucinogens
- (L) Amphetamines/Methamphetamines
- (M) Other Stimulants
- (N) Barbituates
- (O) Other Depressants
- (P) Other Drugs
- (U) Unknown Type Drug
- (X) Over 3 Drug Types

**UNITS**
(DU) Dosage Unit (Pills, etc.)
(NP) Number of Plants

## COMPLNT.

| NAME: Last, | First, | Middle | SEX: ☐ (M) Male ☐ (F) Female ☐ (U) Unk. | AGE: ☐ (00) Unknown | RACE: ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ☐ (U) Unknown |
|---|---|---|---|---|---|
| RESIDENT ADDRESS: Street | City | State Zip | RESIDENT PHONE | EMPLOY'T. PHONE | |

## CONFIDENTIAL SUPPLEMENT

| 226-PAGE # | 227-DATE | 228-INCIDENT NUMBER | 229-REPORTING OFFICER | 230-CODE # | 231-VICTIM NAME |
|---|---|---|---|---|---|
| 4 | 10/18/2002 | 02007419 | Darrell McGlothlin | 128 | CONKLIN, ERIC K. |

234--SCENE PROCESSED BY:  
236-PRINTS FOUND? ☐ Yes ■ No  
237-PHOTOGRAPHED? ☐ Yes ■ No  
238-EVIDENCE OBTAINED? ☐ Yes ■ No  

239-APPROVING SUPERVISOR  240-CODE #  241-DATE APPROVED

**WITNESSES**

243-NAME: Last, First, Middle  
244-SEX: ☐ (U) Unk. ☐ (M) Male ☐ (F) Female  
245-AGE: ☐ (00) Unknown  
246-RACE: ☐ (U) Unk. ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander  
247-RESIDENT ADDRESS: Street  City  State  248-Zip  249-RESIDENT PHONE  250-EMPL. PHONE

243-NAME: Last, First, Middle  
244-SEX: ☐ (U) Unk. ☐ (M) Male ☐ (F) Female  
245-AGE: ☐ (00) Unknown  
246-RACE: ☐ (U) Unk. ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander  
247-RESIDENT ADDRESS: Street  City  State  248-Zip  249-RESIDENT PHONE  250-EMPL. PHONE

NARRATIVE:

On Friday 10-18-02 at 2107 hours, I was dispatched to 1019 East Second Street, Richlands in reference to a verbal dispute. Upon arrival I was informed by Victim Eric Conklin that Offender Joshua Smeltzer came to his residence cursed him stating, "Fuck you pussy boy." Offender also threatened to destroy property belonging to Victim.

Victim was advised to obtain warrants. Victim stated he would obtain warrants for this Incident on 10-19-02.

Victim was given a Victim/Witness Information Form.

On 13 February 2003, a check with the Tazewell County General District Court revealed no charges had been filed in reference to this Incident; therefore, this incident is inactive.

Call Report    Call Number - 2007419

Date / Time Printed  1/19/2006  11:16

Date of Call - **10/18/2002**　　　　　　　　　　　　　　Time of Call - **20:10:44**

### Location of Occurrence

Number
Dir
Street Name  **EAST SECOND STREET APT 2**
Apt/Loc
LandMark
Community  **CONKLIN,ERIC**
Cross Street High
From - To Directions
Disposition  **REPORT TAKEN**

### Location of Caller

Number
Dir
Street Name
Apt/Loc
Caller Name  **CONKLIN,ERIC**
Caller Phone  **2769703937**
Cross Street Low
Map Grid

--- Incident Types Assigned To Call ---

| Incident Type | Date Assigned | Time Assigned | Dispatcher |
|---|---|---|---|
| DISORDERLY/FIGH | 10/18/2002 | 20:11:16 | S7414 |

--- Unit Times ---

| Unit ID | Department | Date Assigned | Time Assigned | Status | Dispatcher |
|---|---|---|---|---|---|
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:11:24 | DISPATCHED | S7414 |
| 151 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:11:29 | DISPATCHED | S7414 |
| 152 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:12:07 | DISPATCHED | S7414 |
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:12:12 | ON SCENE | S7414 |
| 151 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:12:16 | ON SCENE | S7414 |
| 152 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:12:19 | ON SCENE | S7414 |
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:18:40 | CLEAR | S7414 |
| 151 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:18:43 | CLEAR | S7414 |
| 152 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 20:18:47 | CLEAR | S7414 |
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 21:03:30 | DISPATCHED | S7414 |
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 21:03:33 | ENROUTE | S7414 |
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 21:04:53 | ON SCENE | S7414 |
| 128 | RICHLANDS POLICE DEPARTMENT | 10/18/2002 | 21:14:12 | CLEAR | S7414 |

Call Report     Call Number - 2007419                         Date / Time Printed   1/19/2006   11:16

--- Incident Locations ---

| Number | Dir | Street | Date | Time | Dispatcher | Apt/Loc | City | Landmark |
|---|---|---|---|---|---|---|---|---|
| | | | 10/18/2002 | 20:11:08 | S7414 | | | |
| 0 | | EAST SECOND STREET APT 2 | | | | | Not Entered | |

--- Initial Statement ---

**10-10**

--- Notes ---

10/18/02 20:17:54 S7414
**CALLER STATED THAT A MALE SUBJECT WAS AT HIS HOUSE FIGHTINH WITH HIM REQYEST OFFICER.**
10/18/02 20:23:32 S7414
**152 ADVISED THAT ALL SUBJECTS WERE ADVISED TO G THERE SEPARATE WAYS, ALSO PARTIES WERW ADVISED OF LEAGL RIGHTS**
10/18/02 20:45:31 S7414
**MR CONKLIN CALLED BACK ADVISED THE SUBJECT WAS THERE AGAIN ALSO THE SMELTZER SUBJECT ADVISED THAT HE WOULD DAMAGE MR. CONKILINS MOTORCYCLE, ALSO DISPATCH ADVISED MR CONKLIN TO STAY INSIDE AND CALL US IF THE OFFENDER RETURNS.**
10/18/02 21:07:45 S7414
**128 WAS ADVISED OF THE PREVIOUS TRAFFIC, HE IS ENROUTE TO SPEAK TO MR CONKLIN.**
10/18/02 21:19:01 S7414
**128 ADVISED REPORT TAKEN THE VICTIM WILL COME TO PD TO OBTAIN WARRANTS IN THE AM.**